IRVING, P.J., for the Court:
¶ 1. James Eric Harrison was under contract as a chicken farmer with Tyson Breeders, Inc. In February 2002, due to poor performance by Harrison, Tyson gave Harrison oral notice of termination of its contract with him. On December 17, 2002, Harrison filed suit in the Covington County Circuit Court,[1] alleging breach of contract, breach of the duty of good faith and fair dealing, and fraudulent inducement. On December 20, 2006, Harrison filed a motion for partial summary judgment on the breach-of-eontract claim. The circuit court granted Harrison’s motion, finding that Tyson had failed to give Harrison written notice of termination as required by its contract with him. After a trial, the jury awarded Harrison $22,328 in damages on the breach-of-contract claim and found in favor of Tyson on the issues of breach of the duty of good faith and fair dealing and fraudulent inducement.
¶ 2. Harrison and Tyson filed cross-motions for a judgment notwithstanding the verdict (JNOV). Harrison also filed a motion for a new trial or an additur. The circuit court denied all post-trial motions.
¶ 3. Feeling aggrieved, Harrison appeals and argues that the circuit court erred by admitting evidence of his past farming habits and giving jury instructions D-12 and D-20. Tyson cross-appeals and argues that the circuit court erred in denying its motion for a JNOV.
¶ 4. We affirm the circuit court’s judgment on direct appeal and reverse and remand on cross-appeal.
FACTS
¶ 5. In 1997, Harrison entered into his first breeder-grower contract with Tyson. The contract had a term of five years. As a breeder grower, Harrison was responsible for the production of quality hatching eggs. Tyson would deliver a flock of breeder hens and roosters to Harrison, and he would care for the flock for approximately forty weeks. During that time, Harrison would collect the eggs laid by the hens, and Tyson would pick them up and transport them to a hatchery. At the end of the forty-week period, Tyson would pick up the flock and take it to a plant to be slaughtered for food.
¶ 6. In 1999, Tyson terminated Harrison due to substandard farming practices. Harrison later defaulted on his loan with Oaklawn Financial Corporation (Oaklawn), a subsidiary of Tyson that made loans to Tyson’s chicken farmers. Harrison testified that the loan was secured by his two chicken houses and ten acres of land. Upon default, Oaklawn had the option to foreclose on the property or to take over the farm. Tyson’s complex in Magee, Mississippi, also incurred a charge for the missed loan payments.
*44 ¶ 7. In 2000, Tyson rehired Harrison.[2] Harrison testified that Mack Walker, Tyson’s live-production manager, and Stan Varner, Tyson’s breeder-hatchery manager, approached him about resuming his contractual relations as a breeder grower. However, Walker and Varner testified that Harrison approached them and begged them to reinstate his contractual arrangement with Tyson. In any event, Tyson decided to enter into a new contract with Harrison, provided that he made the necessary repairs to his chicken houses and improved his farming practices. On October 5, 2000, Tyson placed a new flock at Harrison’s farm. Harrison’s performance improved with the October 2000 flock, and Tyson placed another flock on Harrison’s farm in September 2001.
¶ 8. In the spring of 2001, Harrison approached Walker about the possibility of reducing the payments on his Oak-lawn loan. Walker explained to Harrison that because he was already in arrears on the loan, his payments could not be reduced. However, Walker gave Harrison the name of a bank that made poultry loans and suggested that Harrison contact the bank about refinancing his loan. Harrison contacted First Financial Bank about refinancing his Oaklawn loan, and the bank requested a letter from Varner explaining the gaps in production at Harrison’s farm. In the letter, Var-ner explained that Harrison had had personal problems and mechanical issues that had affected his performance; however, Harrison had corrected the problems, and Tyson had rehired him as a grower breeder. In June 2001, Harrison refinanced his Oaklawn loan with First Financial Bank; however, Harrison was required to pledge the entirety of his property-forty acres, two chicken houses, and his home-as collateral.
¶ 9. Soon after, Harrison’s production performance began to deteriorate. In November 2001, Varner recommended to Walker that Tyson terminate Harrison’s contract based on poor performance. However, Walker testified that he did not immediately make a decision regarding Harrison. In the interim, Tyson gave all of its farmers, including Harrison, a pay raise. In December 2001, Tyson presented all of its farmers with a new one-year contract that reflected the pay raise, and Harrison signed the contract.
¶ 10. In February 2002, Walker and Varner met with Harrison and gave him oral notice that his contract with Tyson was terminated. However, Tyson did not remove Harrison’s flock until May 2002, and Harrison testified that he was paid during that time. Harrison later defaulted on his loan with First Financial Bank and lost his collateral.
¶ 11. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Evidence of Past Farming Habits

¶ 12. Harrison argues that the circuit court erred in admitting evidence of his farming practices prior to his first termination in 1999. Harrison contends that such evidence amounts to improper character evidence in violation of Rule 404 of the Mississippi Rules of Evidence.
¶ 13. A circuit court’s admission or exclusion of evidence is reviewed for abuse of discretion. Alpha Gulf Coast, *45 Inc. v. Jackson, 801 So.2d 709, 729 (¶ 69) (Miss.2001) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (¶ 12) (Miss. 1999)). An appellate court “will not reverse the admission or exclusion of evidence unless the error adversely affects a substantial right of a party.” Id. (citing Floyd, 749 So.2d at 113 (if 12)).
¶ 14. Rule 404(a) provides that “[evidence of a person’s character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion.” Harrison contends that Tyson introduced evidence of his earlier poor performance as a farmer to prove that he performed poorly after he entered into a new contract with Tyson in 2000. However, Tyson argues that Harrison opened the door to such evidence by introducing evidence of his 1997 contract with Tyson. -Tyson further argues that evidence of Harrison’s prior farming practices was necessary to its defense of Harrison’s bad-faith and fraudulent-inducement claims.
¶ 15. We are not persuaded by Harrison’s argument that evidence of his prior poor performance at Tyson constituted improper character evidence. Instead, we find that such evidence was relevant to Tyson’s defense of Harrison’s claim that it had entered into the contract with him for the sole purpose of convincing him to refinance his defaulted Oaklawn loan with another lender and wipe the loan from its books. Relevant evidence may be deemed inadmissible under Rule 403 of the Mississippi Rules of Evidence where “its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumula-five evidence.” However, Harrison has failed to show that evidence of his prior performance should be excluded under Rule 403.
¶ 16. Furthermore, we note that Harrison presented evidence regarding his relationship with Tyson prior to his first termination in 1999. In fact, his 1997 contract with Tyson was the first piece of evidence introduced. Harrison also testified regarding his dealings with Tyson under the 1997 contract and solicited testimony from his witnesses regarding that time period. The Mississippi Supreme Court has held that “where a party has introduced evidence on an issue, that party may not complain about the admission of evidence on the same proposition by an opposing party.” DeMyers v. DeMyers, 742 So.2d 1157, 1160 (¶ 7) (Miss.1999) (citations omitted). Because Harrison introduced evidence of his business relations with Tyson that occurred before his first termination, he cannot complain that Tyson introduced its own evidence from the same time period. This issue is without merit.

2. Jury Instructions

¶ 17. Harrison argues that the circuit court erred by granting jury instructions D-12 and D-20 because they improperly limited the amount of damages that Harrison could recover for Tyson’s breach of contract.[3] Specifically, Harrison asserts that these instructions prevented the jury from awarding consequential damages-the loss of his home, chicken houses, and forty acres of land. Generally, the circuit court “has considerable discretion when instructing the jury.” Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 474 (¶ 78) (Miss.2010) (citing *46 Bickham v. Grant, 861 So.2d 299, 301 (¶ 8) (Miss.2003)). When reviewing jury instructions, an appellate court reads the instructions as a whole. Id. (citing Bick-ham, 861 So.2d at 301 (¶ 8)). “Defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole fairly-although not perfectly-announce the applicable primary rules of law.” Id. (quoting Young v. Guild, 7 So.3d 251, 269-260 (¶ 24) (Miss.2009)).

a. Jury Instruction D-12

¶ 18. Instruction D-12 states in pertinent part:
You are instructed that where a contract requires a party to give written notice of termination of the contract, and where the contract does not require that notice be given at any particular time, then if a party fails to provide written notice of termination, the other party is entitled to a reasonable notice of termination. In such a case, it is your duty as jurors to decide the amount of time that would constitute reasonable notice. A party who is not given notice of termination as required by the contract is entitled to damages for the income, if any, he would have earned during the period constituting reasonable notice.
... If you find from a preponderance of the evidence in this case that Mr. Harrison did not receive reasonable notice of termination, then he is entitled to any income he lost that was caused by Tyson’s failure to give notice a reasonable period before termination. Any such income would be the amount that you find he would have earned during the time after he received a reasonable notice of termination.
The December 2001 contract did not contain a specific notice requirement, it only required that notice of termination be given in writing, which Tyson failed to do. Under Tyson’s theory of the case, any damages suffered by Harrison from receiving oral versus written notice should be limited to a period constituting reasonable notice.
¶ 19. The Mississippi Supreme Court has held that where a party to a contract is given inadequate notice of termination, the appropriate measure of damages is the party’s expected income over an appropriate notice period. Fuselier, Ott & McKee, P.A. v. Moeller, 507 So.2d 63, 67 (Miss.1987). In a case applying Mississippi law, the United States Court of Appeals for the Fifth Circuit held that when a contract does not specify a notice period, but requires written notice of termination, the proper measure of damages for failure to give written notice is the plaintiffs net income during a period of time constituting reasonable notice. King v. Exxon Co., U.S.A., 618 F.2d 1111, 1119 (5th Cir.1980). “What constitutes reasonable notice of termination ... is a question to be resolved by the jury, since reasonable notice will vary in accordance with the facts and circumstances of each case.” Id. (citing Hazell Machine Co. v. Shahan, 249 Miss. 301, 318, 161 So.2d 618, 624 (1964)).
¶ 20. Tyson’s theory of the case is reflected in instruction D-12, which represents an accurate statement of Mississippi Law. Therefore, the circuit court did not err in granting the instruction.

b. Jury Instruction D-20

¶ 21. Instruction D-20 states:
You are instructed that damages for breach of contract are intended to give an injured party the benefit of his bargain by awarding him a sum of money that will put him in the same position he would have had if the contract [had] been performed. A party injured by a breach of contract does not have the right to be placed in a better position *47 than he would have occupied had the contract been performed.
You are further instructed that the December 2001 Contract between James Eric Harrison and Tyson Breeders was for a term of one year. Even if you decide to award damages to Mr. Harrison for breach of that contract, you are instructed that any such damages are limited by the one-year term of the contract.
Under Mississippi law:
Contract damages are ordinarily based on the injured party’s expectation interest and are intended to give him the benefit of the bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.
Theobald v. Nosser, 752 So.2d 1036, 1042 (¶22) (Miss.1999) (quoting J.O. Hooker & Sons, Inc. v. Roberts Cabinet Co., 683 So.2d 396, 405 (Miss.1996)).
¶ 22. Harrison signed a one-year contract with Tyson, effective December 31, 2001, to December 31, 2002. The contract had no right of renewal. At trial, Harrison put on evidence of his estimated lost income over a ten-year period. However, under Tyson’s theory of the case, Harrison’s damages from Tyson’s breach of contract should be limited to the income that he would have received for the duration of the one-year contract. Instruction D-20 states Tyson’s theory of the case and is an accurate statement of the law; therefore, the circuit court did not err in granting the instruction.
¶ 23. Finally, we note that despite Harrison’s contention that the above jury instructions precluded the jury from considering consequential damages, the circuit court granted instruction P-17, which states in pertinent part:
If you find for the Plaintiff, Eric Harrison, you should award damages in an amount that will put him in as good of a position as he would have been had Tyson Breeders, Inc. given written notice of termination as required in the 2001 contract.
You can consider the losses incurred and the gains not realized due to Tyson Breeders, Inc. ⅛ failure if it knew or had reason to foresee at the time the contract was made that failure to fulfill the contract will probably cause such losses and/or damages to the Plaintiff, Eric Harrison.
(Emphasis added). The above instruction gave the jury the opportunity to consider consequential damages, such as the loss of Harrison’s home, his chicken houses, and his forty acres of land, even if, as Harrison contends, instruction D-12 and D-20 did not. Therefore, we find that the jury instructions, when reviewed as a whole, were proper. This issue is without merit.

3. Tyson’s Motion for a JNOV

¶ 24. Tyson argues that the circuit court erred by denying its motion for a JNOV because the jury’s award of $22,328 in damages for Tyson’s breach of contract is not supported by the evidence. “When reviewing the denial of a motion for [a] JNOV, we consider the evidence in the light most favorable to the non-moving party, and give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence.” Natchez Elec. & Supply Co. v. Johnson, 968 So.2d 358, 361 (¶ 12) (Miss.2007) (citing Steele v. Inn of Vicksburg, 697 So.2d 373, 376 (Miss. 1997)). An appellate court will not reverse a circuit court’s denial of a JNOV unless the facts “point so overwhelmingly in favor of the party requesting the JNOV that reasonable persons could not have arrived at a contrary verdict....” Id. at 361-62 (¶ 12) (citing Steele, 697 So.2d at 376). *48 Where a verdict is supported by substantial evidence, meaning evidence of “such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions,” an appellate court will affirm the circuit court’s denial of a JNOV. Id. at 362 (¶ 12) (citing Blake v. Clein, 903 So.2d 710, 731 (¶ 61) (Miss.2005)).

a. No Damages

¶ 25. Tyson argues that Harrison suffered no damages by receiving oral notice of termination versus written notice of termination as required by the contract. Whether Harrison suffered damages as a result of Tyson’s breach of contract was a question for the jury. See Causey v. Sanders, 998 So.2d 393, 409 (¶ 54) (Miss. 2008). Based on the evidence presented at trial, the jury found that Tyson was liable to Harrison for damages caused by its breach of contract. As we find no reason to question the jury’s judgment, Tyson’s argument is without merit.

b. Reduced Damages

¶26. Tyson maintains that even if Harrison is entitled to damages following its breach of contract, those damages should be limited to either: (1) lost profits equal to the amount of time remaining under the contract when Tyson picked up Harrison’s last flock in May 2002 or (2) lost profits earned during a period of time that constitutes reasonable notice of termination.
¶ 27. The jury awarded $22,328 in damages, which represented one year of Harrison’s average net income from his farm. “It is primarily the province of the jury to determine the amount of damages to be awarded[,] and the award will normally not ‘be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount[,] and outrageous.’ ” Lewis v. Hiatt, 683 So.2d 937, 941 (Miss.1996) (quoting Harvey v. Wall, 649 So.2d 184,187 (Miss.1995)).
¶ 28. We find considerable support for Tyson’s argument that Harrison’s damages should have been limited. While it is uncontested that Tyson failed to give written notice of termination as required by its contract with Harrison, Tyson’s breach of the contract did not occur until it picked up the chickens in May 2002 and stopped performing under the contract.[4] Applying the reasoning from King, 618 F.2d at 1119, we find that Harrison’s damages for Tyson’s breach of contract should be limited to the period of time constituting reasonable notice of termination. Since Tyson could terminate Harrison’s contract at any time during the contract year by giving him written notice of termination, the contract was essentially an at-will contract.
¶ 29. Consequently, we reverse the judgment of the circuit court awarding Harrison $22,328 in damages and remand this case for a new trial on damages only. During retrial, the jury shall be instructed to award damages for that period of time which would constitute reasonable written notice of termination under a one-year at-will employment contract. The award of damages shall be limited to Harrison’s lost profits during the period of time that the jury determines to be a reasonable-notice period.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY IS AFFIRMED ON DIRECT APPEAL AND REVERSED AND RE *49 MANDED ON CROSS-APPEAL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. RUSSELL, J„ CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. Harrison originally filed suit in the Coving-ton County Chancery Court. On interlocutory appeal, the Mississippi Supreme Court determined that the circuit court had exclusive jurisdiction over Harrison’s claims and ordered that the case be transferred to circuit court. Tyson Breeders, Inc. v. Harrison, 940 So.2d 230, 234 (¶ 14) (Miss.2006).

. There is some dispute regarding whether Harrison returned to work for Tyson under the terms of the 1997 contract, which was effective from 1997 to 2002, or whether he returned under an oral agreement.

. We note that the record does not include the jury-instruction colloquy; therefore, we do not know what objections and arguments were made at trial concerning the challenged instructions.

. Harrison testified that Tyson continued to pay him until the chickens were removed from his farm in May 2002.