JAMES, J.,
for the Court:
¶ 1. Cheri Heflin appeals the decision of a jury in the Harrison County Circuit Court awarding her $32,500 in damages for injuries sustained in a vehicle accident. Arguing that she was entitled to $76,000, she appeals, raising four issues: (1) the circuit court erred in granting Nationwide Insurance Company’s motion in limine and excluding from evidence Nationwide’s name and the existence of Heflin’s uninsured-motorist policy, but permitting counsel for Nationwide to participate in the trial; (2) the circuit court erred in excluding testimony regarding the speed at which Stephen Merrill was traveling at the time of the accident; (3) the circuit court erred in excluding statements made by Merrill to Heflin’s husband, Mike Heflin, immediately following the accident; and (4) the circuit court erred in denying Hef-lin’s motion for a new trial due to cumulative errors. Upon review, we And no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On January 21, 2005, Mike was driving his 2005 Ford F-150 truck with his wife, Heflin, in the passenger seat. While the Heflins were at a complete stop, Merrill hit the Heflins’ truck from behind. Merrill was driving a 2004 Mercedes ML 350 SUV owned by Frank Ciuffetelli. Ci-uffetelli’s SUV was covered by an Allstate insurance policy. The Heflins’ truck was covered by an uninsured/underinsured motorist (UM) policy, with Nation-wide.
¶ 3. On August 29, 2007, Heflin filed a complaint against Merrill and/or Merrill’s estate,[1] Nationwide, and Ciuffetelli. Hef-lin alleged that Merrill was liable due to his negligent operation of the vehicle. She further alleged that her insurance provider, Nationwide, was liable under the provisions of the UM clause of her policy. Finally, Heflin alleged that Ciuffetelli was liable under a theory of negligent entrustment and/or respondeat superior because he owned the vehicle that caused the accident and had allegedly given Merrill permission to use the vehicle.[2]
114. According to Heflin, she suffered from temporomandibular joint disorder (TMJ) as a result of the accident. Heflin claims that she presented evidence that her out-of-pocket medical bills were $40,000, and that she anticipated $100,000 in future medical bills. On February 5, 2010, Nationwide filed its designation of an expert witness, which was subsequently joined by Merrill’s estate and Ciuffetelli, designating Robert T. Watts, DMD., as an expert. On February 10, 2010, Heflin filed her designation of expert witnesses, designating the following experts: Dr. Elmer Gaudet Jr., Helfln’s treating orthodontist; and Dr. Edward Boos, DDS, Heflin’s treating dentist and oral surgeon.
¶ 5. On October 3, 2011, Nationwide filed a motion in limine, which stated:
Nationwide ... has offered to stipulate [that] the policy made the subject of this suit was in full force and effect at the *890 time of the subject accident and that it will be responsible for payment of any final judgment in excess of the liability coverage limit of [Merrill’s estate]. The existence of the Nationwide ... policy would have no relevance to any issue to be decided by the jury and should therefore be excluded under Mississippi Rule[s] of Evidence 402, 403, and 411.
On October 5, 2011, the circuit court granted Nationwide’s motion in limine, prevent ing any mention to the jury of Nationwide’s presence as a party to the lawsuit and any mention of the existence of the Heflins’ UM policy with Nationwide. On October 6, 2011, the parties entered into a stipulation, which read:
The parties agree and stipulate as follows:
At the time of the accident, [Heflin] was insured by [Nationwide.] She maintained, through her husband, ... an uninsured motorist (UM) policy with a policy limit of up to $600,000.00. Additionally, [Merrill] at the time of the accident qualified as an owner or occupier of an under insured motor vehicle and that any final judgment for [Heflin], if any, in excess of the insurance carrier by [Merrill], if any, would be the responsibility of [Nationwide] up to the policy limits of $600,000.00.
This stipulation was signed by counsel for each party and the circuit court judge.
¶ 6. On October 6, 2011, a trial was held on damages only. Heflin sought $76,000 in damages. On October 7, 2011, the jury-returned a $32,500 verdict for Heflin. On October 14, 2011, the circuit court entered a judgment on the jury’s verdict, awarding Heflin $32,500, plus eight percent interest per year until paid.
¶ 7. On October 25, 2011, Heflin filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for an additur or a new trial. She argued that the jury’s verdict of $32,500 did not fairly represent the evidence presented and evinced prejudice, passion, or bias. The motion was denied. Heflin now appeals.
DISCUSSION
I. Whether the circuit court erred in granting Nationwide’s motion in limine, preventing disclosure to the jury of Nationwide’s name and the existence of Heflin’s UM policy through Nationwide, but permitting counsel for Nationwide to participate in the trial.
¶ 8. This Court “will reverse [the circuit] court’s denial or grant of a motion in limine only if the court abused its discretion in denying or granting the motion.” Wright v. Royal Carpet Servs., 29 So.3d 109, 115 (¶ 13) (Miss.Ct.App.2010). When granting a motion in limine, the circuit court must first find the following two factors present: “(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury.” Id. (quoting Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988)).
¶ 9. Under Rule 401 of the Mississippi Rules of Evidence, “‘[relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Further, “[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.” M.R.E. 402. However, “[a]lthough relevant, evidence may be excluded if its probative value is *891 substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403.
¶ 10. In the case before us, the Mercedes driven by Merrill was insured by Allstate. Nationwide was named as a defendant in the suit because it provided UM coverage to the Heflins. Nationwide filed a motion in limine to exclude any mention of Nationwide’s presence as a party to the lawsuit and to exclude the existence of the Heflins’ UM policy with Nationwide. In support of its motion in limine, Nationwide noted the stipulation agreed to by the parties, which stated “that any final judgment for [Heflin], if any, in excess of the insurance carrier by [Merrill], if any, would be the responsibility of [Nationwide] up to the policy limits of $600,000.00.”
¶ 11. After hearing arguments from both sides, the circuit court granted Nationwide’s motion in limine, finding as follows:
With regard to the initial motion, based on the parties’ assertions, this issue has not been addressed by our state appellate courts. Though I do recognize there are different approaches to the instant issue with those approaches being extra jurisdictional approaches, I do understand, and it’s the view of this court that based on the circumstances of this particular case[,] where liability is admitted[,] and taking into account the stipulation agreed to by and between the parties, it is the extent of the plaintiffs injuries, if any, that are relevant to [the] instant litigation.
Whether or not UM coverage exists is not relevant. And it’s the court’s opinion that introducing that issue along with the existence of Nationwide[’s coverage] ... to the jury would potentially prejudice that jury as to a determination of damages. Therefore[,] Nationwide’s motion in li-mine is granted.
(Emphasis added).
¶ 12. We find that the circuit court was within its discretion to exclude Nationwide’s policy because the parties stipulated that Nationwide would be responsible for any amount not covered by Allstate up to Heflin’s policy limits. Additionally, liability was not an issue in the case. Instead, the only issue litigated and presented to the jury was the amount of damages. Therefore, there was no reason for the jury to consider the Nationwide UM policy. Admitting such evidence could only serve to possibly inflate or deflate a verdict or confuse the jury. As such, we find that the Nationwide policy was properly excluded.[3] In response to the dissenting opinion, this Court finds the circuit court based its ruling on the limited facts in this case, where liability was admitted and there was a stipulation between the parties. The circuit court also recognized that this issue had not been addressed by our state appellate courts. This issue is without merit.
II. Whether the circuit court erred in excluding Mike’s testimony regarding the speed at which Merrill was traveling at the time of the accident.
¶ 13. “A circuit court’s admission or exclusion of evidence is reviewed *892 for abuse of discretion.” Harrison v. Walker, 91 So.3d 41, 44 (¶ 13) (Miss.Ct. App.2011). This Court “will not reverse the admission or exclusion of evidence unless the error adversely affects a substantial right of a party.” Id. at 45 (¶ 13).
¶ 14. Heflin argues that the speed of Merrill’s vehicle was relevant to her damages, and that the circuit court erred in excluding such evidence. At trial, the following exchange took place while Mike was on the witness stand:
Q: Okay. When you’re sitting there at the stop sign watching the traffic coming from the north on your left there, did you have any indication that there was about to be a wreck?
A: ... I was watching traffic to the north that was coming from the north to the south. And I had glanced back and glanced in my rearview mirror and saw Mr. Merrill as he was barreling down on top of us. And I knew at [that] instant that we were fixing to be hit.
Q: Where did you see him, I mean, in the rearview mirror?
A: I saw him in the rearview mirror. And it was just a glance just before it happened.
Q: Okay. How hard did it hit you?
■ A: It hit us real hard, did a lot of damage to the back of my truck. I was concerned that it was going to push us out into the traffic ... so I instinctively stepped on the brakes really hard and braced myself.
Q: Do you have an opinion as to how fast the Mercedes was going when it hit the back of your truck?
At that point, counsel for Merill’s estate objected, arguing the following:
[COUNSEL FOR MERRILL’S ESTATE]: Objection, Your Honor. I don’t think Mr. Heflin is qualified to render opinions about the speed of motor vehicles that he sees in the rearview mirror of his truck. He has no expertise or training in that regard, and he certainly hasn’t been designated as an expert in that field.
THE COURT: What says the plaintiff as to that calling for speculation?
[COUNSEL FOR HEFLIN]: Your Honor, he was there. This is not like an accident reconstructionist. This is not based upon certain things that an expert would know. He was in the truck. He ... saw the car coming. I’ll be happy to give a little bit more of his background in terms of what he’s basing this on. But first of all I just asked if he had an opinion. I think he’s entitled to have an opinion. And it’s certainly subject to cross-examination. And they can find out whether or not he has [a] basis for that.
THE COURT: All right. I [will] allow him to answer as to whether he has an opinion or not. And then the further questioning with regard to that opinion, you may make your objection if you so see it fit, defense.
[COUNSEL FOR MERRILL’S ESTATE]: Yes, Your Honor.
Q: Do you have an opinion as to how fast he was going?
A: Ido. He—
[COUNSEL FOR MERRILL’S ESTATE]: Objection, Your Honor.
THE. COURT: The objection is sustained.
The direct examination of Mike continued as follows:
Q: Okay. Without saying what that opinion is, okay. We’re going to take baby steps here. Tell me the various things that you are relying *893 upon in formulating that opinion....
A: ... Speed limit on the road was 25 miles per hour. When our truck was hit, it actually hit us with such force that it pulled concrete or the pavement — the asphalt on the road where the tire had locked into the pavement and pushed us forward.
Q: Let me stop you right there. I want to refer you to Plaintiffs Exhibit Number 20. Have you ever seen that before?
A: Yes, I have.
Q: What is that for the jury?
A: It’s a picture ‘of a tire mark on a white line.
Q: Is that what you were talking about where the tire dug into the asphalt?
A: That’s correct. I believe that’s it.
Q: Go ahead.
A: Mr. Merrill had stated after we had gotten out of the car that he did not see our vehicle, that he had actually [sic] was looking to the north watching traffic, and that he was speeding into the southbound lane....
¶ 15. After reviewing the transcript, it appears that no proffer was made regarding the speed of Merrill’s vehicle. “When a trial court prevents the introduction of certain evidence, it is incumbent on the offering party to make a proffer of the potential testimony of the witness or the point is waived for appellate review.” Redhead v. Entergy Miss., Inc., 828 So.2d 801, 808 (¶ 20) (Miss.Ct.App.2001); see also M.R.E. 103(a)(2) (“Error may not be predicated upon a ruling which ... excludes evidences unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.”). “To preserve the excluded testimony for appeal, a proffer would have to [be] made so this Court would know what testimony was excluded.” Redhead, 828 So.2d at 808 (¶ 20). We find that the speed issue is waived because it was not properly preserved for appeal. Accordingly, we affirm the circuit court’s holding on this issue. In response to the dissenting opinion, the circuit court did not allow testimony concerning speed based on what Mike observed by “glanc[ing]” in his rearview mirror. However, the circuit court did allow Mike to testify about the objective evidence of speed that he observed, such as the tire marks shown in Plaintiffs Exhibit Number 20. The car was traveling behind Heflin, and Heflin only saw the car at a glance. There is nothing apparent in the record that shows that Mike had a chance to observe the speed of the car and that he was prevented from testifying about it. Also, there was no proffer on anything Mike objectively observed.
III. Whether the circuit court erred in excluding statements made by Merrill to Mike immediately following the accident.
¶ 16. Heflin argues that the circuit court erred in excluding as hearsay statements made by Merrill to Mike right after the accident. Merrill’s estate argues that the statements were properly excluded because Merrill was not available for cross-examination, and the statements were not relevant since liability was not. an issue.
¶ 17. Under our rules of evidence, “ ‘[h]earsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). “Hearsay is not admissible except as provided by law.” M.R.E. 802. Under Rule 801(d)(2)(A) of the Mississippi Rules of Evidence, a statement is “not hearsay” if it qualifies as an admission by *894 a party-opponent, which occurs when “[t]he statement is offered against a party and is ... the party’s own statement, in either an individual or a representative capacity[.]” However, even if a statement is “not hearsay,” and even if it is relevant under Rule 401, “evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403.
¶ 18. At trial, the following- exchange took place while Mike was on the witness stand:
Q: Let me stop you right there. I want to refer you to Plaintiffs Exhibit Number 20. Have you ever seen that before?
A: Yes, I have.
Q: What is that for the jury?
A: It’s a picture of a tire mark on a white line.
Q: Is that what you were talking about where the tire dug into the asphalt? A: That’s correct. I believe that’s it.
Q: Go ahead.
A: Mr. Merrill had stated after we had gotten out of the car that he did not see our vehicle, that he had actually [sic] was looking to the north watching traffic, and that he wás speeding into the southbound lane to where he could—
[COUNSEL FOR MERRILL’S ESTATE]: Your Honor, I’m going to object. That’s hearsay testimony.
[COUNSEL FOR HEFLIN]: Your Honor, that’s an admission by a party opponent and it’s defined under the rules and not hearsay.
[COUNSEL FOR MERRILL’S ESTATE]: But he’s not here to be cross-examined or defend that statement. I mean, they could just say whatever they want to say that he [said] at the accident scene.
THE COURT: Take out the jury. (Jury out).
THE COURT: All right. What’s the basis for the objection?
[COUNSEL FOR MERRILL’S ESTATE]: Your Honor, he’s asking the witness to — well, the witness stated that Mr. Merrill made certain statements about his operation of a motor vehicle while he was alive. And the objection is, it’s a hearsay objection, Your Honor.
THE COURT: All right. Go ahead and make your response to the objection, plaintiff.
[COUNSEL FOR HEFLIN]: If the court please, under Mississippi Rule of Evidence 801(d)(2), the statement [is an] admission by a party opponent. The statement is offered against a party and is the party’s own statement either in an individual or representative capacity, a statement which the party has manifested an adoption or belief in its truth or a statement made by a person authorized.... That is defined under Rule (d) as not hearsay. Now, the fact that he’s not here, in addition to that it has the additional indicia of authenticity and reliableness[,] is the fact that it was made immediately after the wreck when the testimony we’re anticipating will show that Mr. Merrill came up and apologized and said that he was sorry and that — why he didn’t see him, why he didn’t see the Heflinsf] vehicle was because he was in fact accelerating so that he could merge into the traffic on Lorraine Road. That being the case, since Mr. Heflin was there and heard the defendant say it from his own mouth, he’s entitled to relate that to the jury. It’s *895 certainly ... subject to cross-examination on ... the various issues that [counsel for Merrill’s estate] ■ has raised. But it’s not hearsay.
THE COURT: What do you say, defense, as to whether it’s an admission by a party opponent?
[COUNSEL FOR MERRILL’S ESTATE]: ■ Your Honor, number one, we’re admitting liability... against our interest. But number two, we don’t have a statement — I mean, Mr. Merrill can’t be here to confirm or deny. You know, he can’t be asked, did you say this, and he says no and then they go to a witness and the witness says, well, I heard you say it. So that’s admission against interest, Your Honor-I mean, Mr. Merrill is not here to take up for himself and to confirm that he either made this or didn’t or even had a position on it.
THE COURT: [Counsel for Heflin], did you not seek to introduce — was it Merrill’s statement to Ciuffetelli?
[COUNSEL FOR HEFLIN]:' No. That was what I tried to exclude.
THE COURT: And for what grounds did you try to exclude that? How is that different from what’s—
[COUNSEL FOR HEFLIN]: Because Mr. Ciuffetelli was not a party opponent. This was a statement made in the presence, you know, right there at the accident at the time of the accident. In other words[,] they can’t get it in through Ciuffetelli. I can get it in through the Heflins.
THE COURT: What’s the difference?
[COUNSEL FOR HEFLIN]: Well, for one thing[,] it was made at the time of the accident, and I think that since I’m representing the party opponent, I think I could have gotten that statement in if I wanted to, Ciuffetelli, because it is — when it is offered by a party opponent, that’s part of the definition. You can’t put it in if it’s self-serving.
THE COURT: All right. What’s the response to that?
[COUNSEL FOR MERRILL’S ESTATE]: Judge, I think they’re the same. And if it’s a time element, I went back and read — I mean, it was my — Mr. Ciuffetelli says later in his deposition it was two to three minutes. So my position is it would be two to three minutes after this impact. And so the time element is exactly the same, Your Honor.
THE COURT: ... [W]hat is the anticipated substance of the statement you seek to introduce?
[COUNSEL FOR HEFLIN]: We are anticipating that Mr. Heflin is going to say that Mr. Merrill told him, came up to him right after the accident and said to the effect, gee whiz, I’m really sorry, I didn’t even see you. I was watching the traffic coming from the north and was accelerating into the turning lane so that I could merge. This is part of the — and we’ve got some authorities on the issue of his qualifications to testify as to the speed of the vehicle we might as well get to while we’ve got the jury out. But so as a part of that, it explains why he was not slowing to stop, and this was not a question of a gentle tap. The issue of, although they have admitted liability, the issue of damages and the speed of the vehicle and as a result the credibility of Ms. Heflin’s testimony in terms of the extent of the injuries is directly related to the speed of the impact at the time. And so that being the case, what the defendant said at the scene of the accident to the plaintiffs husband is relevant and is not hearsay.
*896 THE COURT: Any response ... ?
[COUNSEL FOR MERRILL’S ESTATE]: I’m just trying to get it clear in my head.... [A]re you trying to say that my guy was going to run the stop sign? Because that’s not a merge only deal. There’s a stop sign there. And you say that he was going to just merge into traffic and go around the Heflin vehicle?
[COUNSEL FOR HEFLIN]: That’s what it sounds like from the testimony that Mr. Heflin will give. I don’t know if he would have or not. He certainly was not going to do it with a Ford F-150 in his way.
[COUNSEL FOR MERRILL’S ESTATE]: That’s why it’s so preposterous. And Mr. Merrill not being here—
THE COURT: All right. Don’t argue with each other. What is your legal argument ... ?
[COUNSEL FOR MERRILL’S ESTATE]: I mean, I’m sticking with it’s a hearsay objection, Your Honor. My guy is not available to be cross-examined about it. And so they could — I mean, anyone, any witness could just make up whatever he said at the scene. We have nothing to base it on other than a witness’s testimony.
[COUNSEL FOR HEFLIN]: Availability of a witness is not a criterion for the determination of the definition of an admission by a party opponent as not being hearsay. It doesn’t matter whether the party is available or not. It is merely a statement offered by a party opponent of what his opponent says. It is not hearsay.
THE COURT: All right. Give me five minutes. I’ll be out with a ruling. Mr. Heflin, you’re still on the witness stand, sir. Please don’t discuss your testimony with anyone....
(Pause in proceedings)
THE COURT: Okay. With regard to the instant objection, although the court sees it as an admission of a party opponent, I think in light of the fact that the person who made the statement is now deceased and that the defendant has admitted liability, I feel the statement, if introduced to the jury, will serve only to inflame and confuse as to the issues. Accordingly, the objection is sustained. Let’s bring the jury in.
[COUNSEL FOR HEFLIN]: Could I go ahead and put on the proffer of what the testimony was going to be then?
THE COURT: Yeah.
(Emphasis added). A proffer of Mike’s testimony was made as follows:
Q: Mr. Heflin, what that means is that for the purposes of preserving the record, I want you to go ahead and testify about the conversation that you had with the deceased defendant immediately when you got out of your truck.
A: He basically told me, when he got out he said, God, I’m sorry, it was my fault. I was looking to the left. I was watching the traffic. I was fixing to speed [up] and merge into the traffic going south, and I looked up, and you were there, and I hit you.
Q: Okay. Did you have any other conversations with him concerning the accident?
A: Only that it was his fault at that time.
Q: Okay. Did he tell you whether or not he had even hit his brakes?
*897 A: He did not say he hit his brakes.
Q: Did not say that. Just that he never saw you until he hit you.
A: He said he never saw us until he hit us.
Q: Okay. If the court please, that concludes the proffer.
¶ 19. In the case before us, the circuit court properly found that the statements made by Merrill to Mike were not hearsay because they qualified as admissions by a party-opponent under Rule 801(d)(2). However, the circuit court was within its discretion to exclude such statements under Rule 403 because Merrill was not available for cross-examination and because liability was not an issue. We cannot say that the circuit court abused its discretion in excluding such evidence. The dissenting opinion admits that the circuit court was within its discretion under Rule 403 to exclude the admission of a party-opponent since liability is not an issue. However, since liability is not an issue, further confusion would also exist if the evidence were not excluded because Merrill was unavailable for cross-examination. The circuit court, however, placed great weight on the fact that liability had been admitted. This issue is without merit.
IV. Whether the circuit court erred in denying Heflin’s motion for a new trial due to cumulative errors.
¶ 20. Heflin argues that she should have been granted a new trial because of the cumulative effect of the errors cited above. Our standard of review for the grant or denial of a motion for a new trial is as follows:
Rule 59 of the Mississippi Rules of Civil Procedure authorizes the trial judge to set aside a jury verdict as to any or all parts of the issues tried and to grant a new trial whenever ... justice requires.. The grant or denial of a motion for a new trial is a matter within the trial court’s sound discretion. A new trial may be granted in a number of circumstances, such as when the verdict is against the substantial or overwhelming weight of the evidence. On appeal, this Court may reverse the granting [or denial] of a new trial only when the trial court has abused its discretion.
White v. Yellow Freight Sys., Inc., 905 So.2d 506, 510 (¶7) (Miss.2004) (internal citations omitted).
¶ 21. Heflin argues that she should have been granted a new trial based on cumulative errors. Under the cumulative error doctrine, multiple errors at trial, which individually are not reversible, may combine to make reversible error. Blake v. Clein, 903 So.2d 710, 718-19 (¶ 16) (Miss.2005). Because we find no error in the issues raised and addressed above, there can be no cumulative error. Therefore, this issue is without merit.
¶ 22. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
CARLTON, J., CONCURS. IRVING, P.J., BARNES AND ROBERTS, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., MAXWELL AND FAIR, JJ. ISHEE, J., NOT PARTICIPATING.

. On July 13, 2005, Merrill passed away due to circumstances unrelated to the wreck; therefore, Heflin named Merrill's estate as a defendant.

. Ciuffetelli was eventually dismissed without prejudice from the suit by agreement of the parties.

. We also note that at least one other jurisdiction has held that an insurance carrier is "not allowed to inform the jury that it was the uninsured motorist carrier for the plaintiff [or] that it would be the source of payment for any damages the jury might award.” See Allstate Ins. Co. v. Wade, 265 Va. 383, 579 S.E.2d 180, 183 (2003) (citing Travelers Ins. Co. v. Lobello, 212 Va. 534, 186 S.E.2d 80, 82 (1972)).