# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00663-SCT

*CHERI W. HEFLIN*

*v.*

*STEPHEN MERRILL AND/OR THE ESTATE OF
STEPHEN MERRILL AND NATIONWIDE
INSURANCE COMPANY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/2011 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| TRIAL COURT ATTORNEYS: | MATTHEW G. MESTAYER |
| | NICHOLAS VAN WISER |
| | JEREMY D. HAWK |
| | WILLIAM L. McDONOUGH, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | NICHOLAS VAN WISER |
| | MATTHEW G. MESTAYER |
| ATTORNEYS FOR APPELLEES: | JEREMY DALE HAWK |
| | JAMES LEROY BANKS, IV |
| | WILLIAM L. McDONOUGH, JR. |
| | NICHOLAS KANE THOMPSON |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 11/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT**:

¶1.     The plaintiff in this automobile-accident lawsuit sued her underinsured-motorist insurance carrier. Even though the UM carrier admitted liability and agreed to pay any damages awarded at trial that exceeded available liability coverage, the plaintiff insisted on

informing the jury of the insurance company's status as a defendant. The trial judge refused to allow it. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Stephen Merrill crashed into the back of Cheri and Mike Heflin's automobile. Cheri sued Merrill's estate[1] and her underinsured-motorist carrier, Nationwide Insurance Company. Before trial, Nationwide admitted liability and offered to stipulate in writing that Cheri was an insured under its policy, and that it would be responsible for payment of a final judgment in excess of Merrill's liability coverage. Nationwide then moved to exclude any reference before the jury to its role, and to exclude any evidence that Cheri's car had underinsured motorist coverage. The trial granted the motion, finding that

> [w]hether or not UM coverage exists is not relevant. And it's the court's opinion that introducing that issue along with the existence of Nationwide Insurance Company to the jury would potentially prejudice that jury as to a determination of damages.

¶3.     During the trial, the judge sustained two defense evidentiary objections to Merrill's statement about being sorry for the accident and Mike's opinion about how fast Merrill's car was going.

¶4.     Mike was prepared to testify that after the accident Merrill said, "God, I'm sorry, it was my fault." The defense made a hearsay objection and the trial judge ultimately sustained the objection. The trial judge acknowledged that the statement was not hearsay[2] but still excluded it, because "the person who made the statement is now deceased and [ ] the

---

[1] After the accident, Merrill passed away due to causes unrelated to the accident.

[2] See Miss. R. Evid. 801(d)(2)(a) (statements offered against opposing party are not hearsay).

defendant has admitted liability, I feel the statement, if introduced to the jury, will serve only to inflame and confuse as to the issues."

¶5.     Mike also was prepared to give his opinion of Merrill's speed before the accident. The plaintiff argued that Mike was uniquely qualified to give this lay opinion based on his "experience in [ ] dealing with wrecks in the past in the process of pursing claims in his role as a Nationwide auto insurance agent," and as a result of the "many wrecks he's been involved in and how many claims he's filed." The trial judge also excluded this testimony.

¶6.     After the jury awarded Cheri $32,500—well under Merrill's liability policy limits—Cheri filed a motion for a new trial or additur. The trial court denied the motions.

¶7.     Cheri appealed, arguing that the trial court erred by not disclosing Nationwide's identity, sustaining the two evidentiary objections, and not granting the post-trial motions. The Court of Appeals affirmed, finding that "there was no reason for the jury to consider the Nationwide UM policy," and "[a]dmitting such evidence could only serve to possibly inflate or deflate a verdict or confuse the jury."[3] Because the issue of revealing a UM carrier's role as a defendant and involvement in a case has been the subject of debate among the bench and bar, we granted certiorari to address the issue along with the other evidentiary rulings and denial of the post-trial motions.

## ANALYSIS

¶8.     The main issue presented is one of first impression in Mississippi. There is debate among members of our Bar as to whether informing the jury of an uninsured-or

---

[3] ***Heflin v. Merrill***, No. 2012-CA-00663-COA, 2013 WL 5614290, at *3 (Miss. Ct. App. Oct. 15, 2013).

3

underinsured-motorist carrier's role as a party is required, and whether the fact of that role is evidence, or simply a matter within the purview of a trial judge in controlling the courtroom and trial. We hold that it is both.

**I.     The trial court properly excluded Nationwide's identity and role in the trial.**

¶9.     This Court reviews a trial court's exclusion of evidence under an abuse-of-discretion standard, and where we find a trial court has erred, we will not reverse unless the error adversely affects a party's substantial right.[4]

**A.     Purpose and Relevance of Nationwide's Role**

¶10.    To be admissible in its role as evidence, the fact of Nationwide's role in this case required some demonstration of relevance.[5] Evidence is relevant only where it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6]

¶11.    The admissibility of all evidence begins with an examination of its purpose. We are unable to discern the purpose or relevance of Nationwide's role, and it is noteworthy that Cheri suggests no purpose or theory of relevance for us to analyze. Indeed, where insurance is concerned, our rules of evidence provide that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or

---

[4] ***James v. Carawan***, 995 So. 2d 69, 75 (Miss. 2008) (citing ***Floyd v. City of Crystal Springs***, 749 So. 2d 110, 113 (Miss. 1999)).

[5] Miss. R. Evid. 402.

[6] Miss. R. Evid. 401.

4

otherwise wrongfully."[7] And it is "well established in this state that evidence of insurance or lack thereof may not be presented at a trial to show who would have to pay the judgment."[8] For example, we have held that an uninsured defendant is prohibited from telling the jury that he or she lacks insurance and would have to pay any judgment.[9]

¶12. We agree with the view of the Supreme Court of New Jersey that, "in the context of a [underinsured motorist] trial, in which the circumstances of the underlying accident are the focus, . . . the insurer's identity is ordinarily irrelevant," and "[w]hether the jury knows the underinsured motorist insurer's identity should have no impact on its evaluation of the extent of the plaintiff's injuries."[10] This reasoning is highly persuasive. Other courts, including those in Virginia, have followed New Jersey's approach under similar circumstances.[11]

---

[7] Miss. R. Evid. 411.

[8] *Capital City Ins. Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505, 510 (Miss. 2004) (citing *Morris v. Huff*, 238 Miss. 111, 118-19, 117 So. 2d 800, 802-03 (1960); *Snowden v. Webb*, 217 Miss. 664, 675-76, 64 So. 2d 745, 750 (1953)).

[9] *Capital City Ins. Co.*, 889 So. 2d at 510 (quoting *Snowden*, 64 So. 2d at 750).

[10] *Bardis v. First Trenton Ins. Co.*, 971 A.2d 1062, 1069 (N.J. 2009).

[11] *See Mattingly v. Stinson*, 281 S.W.3d 796, 798 (Ky. 2009) (prohibiting the disclosure of an underinsured motorist carrier's identity where the tortfeasor remained a real party to the action); *Wineinger v. Ellis*, 855 N.E.2d. 614, 620 (Ind. Ct. App. 2006) (upholding a trial court's order that an underinsured motorist carrier's identity not be disclosed at trial, because the only issue at trial was the extent and nature of injuries); *Allstate Ins. Co. v. Wade*, 579 S.E.2d 180, 183-84 (Va. 2003) (recognizing that sometimes the knowledge that a party is uninsured can actually prejudice the plaintiff and deflate the jury's verdict against the uninsured defendant); *Travelers Ins. Co. v. Lobello*, 186 S.E.2d 80, 82 (Va. 1972) (holding that it was error to inject the issue of uninsured motorist coverage at trial).

¶13.  The only issue in this case was the amount of Cheri's damages. We see no reason for the jury to be informed of Nationwide's role as Cheri's underinsured motorist insurer. This information would have been of no help in deciding the issues before the jury; indeed, the trial judge would have risked a mistrial by allowing the plaintiff to use insurance to prove the defendant's negligence.[12]

¶14.  We find Nationwide's role in this case—insofar as the jury was concerned—was irrelevant. And, although irrelevant evidence occasionally finds its way into the record, it is never admissible under the Mississippi Rules of Evidence.[13]

**B.  Application of the Rule 403 Balancing Test to Nationwide's Role**

¶15.  Even if Nationwide's role had some minimal theory of relevance, it nevertheless properly would have been excluded under Rule 403, which requires exclusion of relevant evidence

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[14]

¶16.  We agree with the New Jersey court's finding that informing the jury that a party provides underinsured motorist coverage on the plaintiff's car actually "increase[s] the risk of jury confusion[,] because the jury would first be told that the defendant is an insurer, but

---

[12] *See* Miss. R. Evid. 411.

[13] Miss. R. Evid. 402.

[14] Miss. R. Evid. 403.

would then be advised that this is irrelevant and should play no role in their evaluation of the claim."[15]

### C. Judges' Control Over the Trial

¶17. The plaintiff also argues that it was "inherently unfair" for the jury not to know of Nationwide's role in the litigation. The trial judge found nothing unfair about it. This Court has "unflagging support" for a trial judge's power to control the progress of a trial.[16] The trial judge was well within his discretion in finding that identifying Nationwide as party would disrupt the trial on Cheri's damages and create confusion for the jury. As stated, trial judges have the authority, power, and responsibility to prevent confusion and undue prejudice.

¶18. The plaintiff correctly points out that our views are in disagreement with those of the Supreme Court of Florida, which holds that full disclosure of a underinsured motorist company's identity at trial "protects the integrity of the jury system and prevents charades at trial."[17] But having made this bold statement, the Florida court fails to explain how or why the jury system's integrity depends to any degree on informing the jury of information it is prohibited from using in its deliberations. And as a dissenting justice on that same court

---

[15] ***Bardis***, 971 A.2d at 1069.

[16] ***Jackson v. State***, 684 So. 2d 1213, 1225 (Miss. 1996) (quoting ***Douglas v. State***, 525 So. 2d 1312, 1318 (Miss. 1992)).

[17] ***Lamz v. Geico Gen. Ins. Co***., 803 So. 2d 593, 595 (Fla. 2001).

noted, "such disclosures creates a substantial risk of unnecessarily shifting the jury's attention to insurance details where there are no insurance issues to be decided by the jury."[18]

¶19.    In short, the Florida approach creates the very real danger that juries will return "insurance verdicts," and this danger is exactly what Mississippi Rule of Evidence 411 was designed to guard against.  Identifying Nationwide as a party at trial would have been a backdoor attempt to use insurance to inflate the jury's verdict; not decide the issue of Cheri's damages.

¶20.    Contrary to the dissent's view, the trial court was not compelled by Mississippi Rule of Civil Procedure 10(a) to disclose Nationwide's identity in the case.  That rule, which does no more than to govern the style of a pleading, says nothing about informing the jury of anything.  Indeed, rare is the case in which a complaint is presented to a jury as an exhibit.

¶21.    The plaintiff suffered no prejudice here.  Her right to bring claims against her underinsured motorist carrier and name the underinsured motorist carrier as a party under Mississippi Rules of Civil Procedure 18, 19, and 20, and Mississippi Code Section 83-11-105 were protected; but those rights do not amount to carte blance license to use the insurer's identity to increase the jury's verdict.  The issue in this case is about relevance; and here, Nationwide's identity lacked any.

II.    **The trial judge committed no other reversible error in sustaining the two evidentiary objections and denying the post-trial motions.**

¶22.    Finally, we will briefly address Heflin's other three issues.  First, as to Merrill's statement about being sorry for causing the accident, we are unable to find that the trial judge

---

[18] *Id.* at 597 (Wells, C.J., dissenting).

abused his discretion by excluding this evidence under Mississippi Rule of Evidence 403. The trial court correctly recognized that the statement was not hearsay under Mississippi Rule of Evidence 801(d)(2) because it was a statement offered against a party opponent. But, because the only issue at trial was Cheri's damages, the trial judge was well within his discretion to exclude the statement as being unduly prejudicial.

¶23.    Second, as to Mike's opinion about the speed of Merrill's vehicle, the trial judge again was well within his discretion to exclude this testimony. Mississippi Rule of Evidence 701 provides in essence that "lay witness opinion [is limited] to those opinions or inferences which are rationally based on the perception of the witness and helpful to the clear understanding of his testimony or the determination of a fact in issue."[19]

¶24.    When Mike was asked about seeing Merrill's car before the accident, he testified he "glanced back and glanced in [his] rearview mirror . . . [a]nd it was just a glance just before it happened." Given this testimony, he appropriately was allowed to give his lay opinion that Merrill's car "was barreling down on top of us." But allowing him to give the jury his opinion about the exact speed at which Merrill's vehicle was traveling would have elevated his role from lay witness to that of an expert.[20]

¶25.    In an attempt to bolster Mike's qualification to give a lay opinion about speed, the plaintiff cited Mike's experience as an insurance agent. But Rule 701 prohibits lay opinions

---

[19] ***Roberts v. Grafe Auto. Co., Inc.***, 701 So. 2d 1093, 1099 (Miss. 1997) (citing ***Couch v. City of D'Iberville***, 656 So. 2d 146, 153 (Miss. 1995)).

[20] Miss. R. Evid. 702.

that are based on special training and knowledge.[21] A lay witness's unique qualifications have no bearing on the witness's ability give a lay opinion. Ultimately, the speed of Merrill's vehicle was a fact for the jury to determine.

¶26. Because we find no error in the trial court's rulings on any of the evidentiary issues in this case, we find there was no cumulative error warranting a new trial or an additur; and that the trial judge did not abuse his discretion in denying the plaintiff's post-trial motions.[22]

## CONCLUSION

¶27. We hold as a matter of first impression that, in Mississippi, the proponent of evidence of the role of an uninsured-or underinsured-motorist carrier's role in litigation over benefits due under the policy as a result of a tortfeasor's negligence must demonstrate the relevance of the evidence and that it passes Rule 403's balancing test. Because the plaintiff in this case has failed to do so, we affirm the judgments of the trial court and the Court of Appeals. The trial judge committed no error in this case by excluding any reference to Nationwide and the other evidentiary rulings.

¶28. **AFFIRMED.**

**RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J. WALLER, C.J., NOT PARTICIPATING.**

**KING, JUSTICE, DISSENTING:**

---

[21] Miss. R. Evid. 701(c) (providing that lay opinion may not be based on "scientific, technical, or other specialized knowledge" within the scope of Rule 702).

[22] *See **Maddox v. Muirhead***, 738 So. 2d 742, 743 (Miss. 1999) (noting that a trial court reviews a denial of a motion for new trial or additur for abuse of discretion).

¶29. Because I disagree that the mere identity of a party who participates in a trial is "evidence" subject to exclusion, and because I believe that the trial court in this case erred by excluding the identity of a defendant who participated in the trial, I respectfully dissent.

¶30. This appeal stems from a motion in limine filed by Nationwide, requesting that the court exclude "any reference or comment before the venire or jury related to the insurance *policy* issued by Nationwide Insurance Company made the subject of this matter, and to exclude any evidence of the same." (Emphasis added.) Nationwide maintained that it had "offered to stipulate that the policy . . . was in full force and effect at the time of the subject accident and that [Nationwide] will be responsible for payment of any final judgment in excess of the liability coverage limit" of Merrill. It argued that the existence of the policy had no relevance to any issue decided by the jury. At the hearing on the motion, Nationwide argued that, in order to implement its motion, no mention of Nationwide whatsoever could be made at trial. According to Nationwide, it "would simply come off the pleadings. It would not be there. Then it would be a suit reflecting the true dispute, that being the amount of damages that the plaintiff is entitled to. . . . [T]he jury would not need to know why Nationwide is here because there would be no appearance that Nationwide was in fact here." Nationwide argued that its participation at trial could be explained as Merrill simply having two lawyers, and stated that counsel for Nationwide would examine two of the expert witnesses on behalf of the defense. The court granted Nationwide's motion in limine, preventing any mention of the "existence" of Nationwide during trial.[23] It found that, in light

_____

[23]The trial court stated that "it's the court's opinion that introducing [UM coverage] along with the existence of Nationwide Insurance Company to the jury would potentially

11

of the facts that liability was admitted and Nationwide had admitted that the Heflins were covered by their UM policy, only the extent of Heflin's injuries was relevant at trial and that making Nationwide's existence in the lawsuit known to the jury would prejudice it.

¶31. At trial, counsel for Nationwide participated in a videotaped deposition of the defense expert that was played for the jury. Counsel for Nationwide also conducted the voir dire of one of Heflin's expert witnesses, and also conducted the cross-examination of that expert. The cross-examination by counsel for Nationwide filled approximately sixteen pages of the transcript of the trial.

¶32. At trial, Heflin introduced evidence that her out-of-pocket medical bills were approximately $40,000 and that she anticipated approximately $100,000 in future medical bills. She also claimed damages for pain and suffering. She ultimately requested that the jury award her damages totaling approximately $200,000. The jury returned a verdict in favor of Heflin in the amount of $32,500, and the trial court entered a judgment on the jury's verdict. Heflin filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, for additur, or new trial. The trial court denied the motion, and Heflin appealed.

¶33. A divided Court of Appeals affirmed the trial court. The Court of Appeals held that the trial court was within its discretion "to exclude Nationwide's policy because the parties stipulated that Nationwide would be responsible for any amount not covered by Allstate up to Heflin's policy limits. Additionally, liability was not an issue in the case. . . . Admitting such evidence could only serve to possibly inflate or deflate a verdict or confuse the jury."

---

prejudice that jury as to a determination of damages."

12

*Heflin v. Merrill*, __ So. 3d __, 2013 WL 5614290 at *3 (Miss. Ct. App. Oct. 15, 2013). It concluded, then, that "the Nationwide *policy* was properly excluded." *Id.* (emphasis added). In his dissent, Judge Griffis, joined by three other judges, argued that the issue of excluding any mention of Nationwide, despite its status as a party to the lawsuit, was not an evidentiary issue, but a procedural issue. The dissent concluded that the trial court erred by excluding all references to Nationwide, yet allowing Nationwide to participate in the trial. It found that

> Heflin's complaint asserted . . . a contractual claim against Nationwide. Nationwide has defended its interests and fully participated throughout the litigation. Nationwide, even after this ruling, participated at trial by cross-examining a witness and making objections. The interests of justice require that the identity and role of Nationwide be revealed to the jury.

*Id.* at *14 (Griffis, J., dissenting).

¶34.     Nationwide filed its motion in limine to exclude evidence of or reference to the UM policy issued by it to Heflin. To effectuate this motion, Nationwide argued that any and all mention of Nationwide should be prevented; to whit, that the jury should not be made aware of Nationwide's existence in this particular lawsuit. Heflin objected, arguing that the exclusion of Nationwide, while it actively participated in the litigation, would mislead the jury and prejudice Heflin because the jury would think her claim was simply against a dead man's estate, rather than including a contractual claim against her own insurance company. The circuit court agreed to conceal from the jury the existence of Nationwide in the lawsuit, while allowing Nationwide to actively participate in the trial. Nationwide had also actively participated in the case during the time leading up to trial.

¶35.     The majority mischaracterizes the mere identity of Nationwide as a participating party as "evidence." It is certainly the case that insurance *policies* themselves are often excluded

13

at trial. The Mississippi Rules of Evidence provide that irrelevant evidence, as well as relevant evidence in which the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" may be excluded. M.R.E. 402, 403. Further, Rule 411 provides that

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

M.R.E. 411. However, merely identifying Nationwide as a defendant is not "evidence that a person was . . . insured against liability," and is thus not an evidentiary issue. Rather, the issue regards simply referencing the proper procedural posture of the case. The issue that was placed before the trial court, and which is before this Court, is whether a party defendant may actively participate in a case and not be identified as a party defendant in the case.[24] Thus, the majority mistakenly analyzes a purely procedural issue as if it were an evidentiary issue. The identifying by name of a party defendant, who actively participates in the trial of a case, is not an effort to place an item of evidence into the trial record. Nor is the

---

[24]Nationwide and the majority both rely on the proposition that the mere identity of a party is somehow "evidence." "Evidence" is defined as "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." *Black's Law Dictionary* 595 (8th ed. 2004). Nationwide and the majority both fail to explain how merely identifying a party as a party "tends to prove or disprove the existence of an alleged fact." Such an interpretation that the identity of a party alone is "evidence" could have widespread ramifications on our legal system. For example, in a criminal case for manslaughter, in which the defendant concedes that he killed the victim (and thus concedes identity and admits to the actions that led to a death), but asserts that he did so in self-defense, the rule articulated by the majority indicates that such a defendant would be able to have his identity hidden at trial as irrelevant "evidence."

14

identifying by name of a party defendant, who actively participates in the trial of a case, an effort to offer "evidence that a person was or was not insured against liability" or that "he acted negligently or otherwise wrongfully." M.R.E. 411. If Nationwide, a party defendant actively participating in the trial of this case, did not wish to be identified by name, its remedy was simple and straightforward. That remedy was to cease all active participation in the trial of this case, or to move to sever the cases.

¶36. The majority's view – that the mere identity of a party is "evidence," rather than an issue involving the openness of judicial proceedings – subjects the identity of every single party in every single case to scrutiny under Rule of Evidence 403, an extremely slippery slope. The ramifications are far-reaching and absurd. Is the identity of a criminal defendant "evidence" and must the trial court be compelled to conduct a Rule 403 analysis of it? What about the identity of the State in a criminal prosecution? What relevance does the identity of the State have to the case? A criminal defendant could argue that the identity of the State carries prejudicial effect on his case, as the weight and authority of the State harm his presumption of innocence and minimize the State's burden of proof. What relevance could its identity possibly have other than to lend clout to the prosecution? Must any mention of the State be thus eliminated from criminal defendants' cases? The possibilities are endless, the slope is slippery, and the majority would subject a trial court to needless analysis, when the identity of the parties is simply information the jury and public have a right to know, absent exceptional circumstances.

¶37. In analyzing the issue of whether the identity of a party who actively participates in a case should be revealed to the jury, this Court looks to the United States Constitution, rules

15

of procedure, and caselaw. The Mississippi Rules of Civil Procedure require that complaints contain the names of all parties. M.R.C.P. 10(a). Generally, "the identity of the parties to a lawsuit should not be concealed." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979) (internal quotations omitted).[25] Indeed, juries are entitled to know who the defendant in a trial is. *Wigmore on Evidence*, § 282a, at 168-69 (Chadbourn Rev. 1979). Public access to the names of parties "is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).[26] While the public "right to scrutinize governmental functioning," which includes an assurance of fairness that is preserved by open trials, is not as compromised by party anonymity as it is by closure of a trial itself, "there [nevertheless] remains a clear and strong First Amendment interest in ensuring that '(w)hat transpires in the courtroom is public property.'" *Id.* (quoting *Craig v. Harney*, 331 U.S. 367, 374, 67 S. Ct. 1249, 91 L. Ed. 1546 (1947)). The "almost universal practice of disclosure" due to the "customary and constitutionally-embedded presumption of openness in judicial proceedings" may be overcome only when the need for party anonymity due to privacy concerns

---

[25]Federal Rule of Civil Procedure 10(a) is substantially the same as Mississippi Rule of Civil Procedure 10(a). When interpreting the Mississippi Rules of Civil Procedure, this Court views federal interpretations of the federal counterpart to the state rule as persuasive authority. *Veal v. J.P. Morgan Trust Co., N.A.*, 955 So. 2d 843, 847 (Miss. 2007).

[26]The majority not only discounts the plaintiff's right to have the jury informed of Nationwide's role, it completely ignores the public's constitutional stake in the openness of judicial proceedings.

"overwhelms the presumption of disclosure mandated by procedural custom." ***Stegall***, 653 F.2d at 185-86.

¶38.    Furthermore, Nationwide was properly joined as a party to the lawsuit.  M.R.C.P. 19, 20; ***Vaughn v. State Farm Mut. Auto. Ins. Co.***, 445 So. 2d 224, 226 (Miss. 1984).  As a party to the lawsuit, if Nationwide did not want to tie its defense to Merrill's, it could have filed a motion to sever the lawsuit, and, if granted, ceased participation in the lawsuit regarding Merrill and litigated only the contractual claim against it.  M.R.C.P. 21; *see also* ***Caldwell v. Alfa Ins. Co.***, 686 So. 2d 1092, 1094 (Miss. 1996) (claims against UM carrier were severed from claims against underlying tortfeasor).  The motion in limine, as granted by the trial court, essentially severs the claims while allowing Nationwide to participate in the suit against Merrill and hide its identity from the jury, simply to avoid any prejudice a vague knowledge of insurance coverage might cause.  While Mississippi law does not address whether such procedure is an acceptable departure from the general rule that the identity of the parties should not be concealed, other jurisdictions have addressed this issue.  The Court of Appeals dissent and the parties deem the two lines of cases as the "Florida" approach and the "Virginia" approach, although other states have also addressed this issue.

*a. The Florida Approach*

¶39.    Florida law requires that when a UM insurer is a proper party to an action against the tortfeasor, "it is appropriate for a jury to be aware of the presence of" the UM insurer.  ***Gov't Employees Ins. Co. v. Krawzak***, 675 So. 2d 115, 117 (Fla. 1996); *see also* ***Lamz v. Geico Gen. Ins. Co.***, 803 So. 2d 593, 595 (Fla. 2001) ("[T]he principle that the jury should be made aware of the precise identity of an uninsured or underinsured insurance carrier if it is a party

17

at trial" is clearly established. "The policy behind such a requirement is that full disclosure of the identity of the parties protects the integrity of the jury system and prevents charades at trial."); *Medina v. Peralta*, 724 So. 2d 1188, 1189-90 (Fla. 1999) (exclusion of the identity of a necessary party for or against whom a judgment will be entered is not subject to a harmless error analysis; it is a "miscarriage of justice" which constitutes reversible error). Florida takes "a strong stand against charades in trials." *Krawzak*, 675 So. 2d at 118. "To have the UM insurer . . . not be so named to the jury is a pure fiction in violation of this policy. The unknown consequences of such a fiction could adversely affect the rights of the insured who contracted and paid for this insurance." *Id.*

¶40.     Other courts have followed Florida's line of reasoning. In *King v. State Farm Mutual Automobile Insurance Co.*, the insured filed suit against his UM insurer subsequent to an automobile accident. *King v. State Farm Mut. Auto. Ins. Co.*, 850 A.2d 428, 429 (Md. Ct. Spec. App. 2003). Prior to trial, the parties stipulated that the other driver was liable and that the insurer was responsible for any judgment in excess of the other driver's insurance coverage.[27] *Id.* at 289-90. The only thing in dispute was the extent of the insured's injuries. *Id.* at 290. The insurer filed a motion in limine asking that its identification as the defendant be prohibited, referencing the Maryland Rule of Evidence regarding the exclusion of references to liability insurance, and the trial court granted the motion. *Id.* The appeals court noted that UM coverage is a promise to pay its own insured rather than a promise to its insured to pay a third party, and thus is not typical liability insurance. *Id.* at 294. It looked

---

[27]The insured had settled with the other driver prior to trial for the limit of her insurance policy. *King*, 850 A.2d at 290.

18

to federal authority regarding Federal Rule of Procedure 10(a), requiring all parties be identified in the complaint, and emphasized the concept that the rule "is more than a statement of customary procedure," but relates to First Amendment concerns and the policies regarding the openness of the courts. *Id.* It determined that the insurers were concerned "that they will suffer adverse economic consequences unless permitted to proceed anonymously." *Id.* at 296. It found that the insurer, a corporation, had "no personal right of privacy," and moreover, that "the unsubstantiated belief by [the insurer] that its disclosure as the defendant would adversely affect the jury's verdict furnishes insufficient justification for withholding from the jury, and from the general public, [the insurer's] identity as the defendant at a public trial." *Id.* at 298. It concluded that

> The lack of *per se* prejudice to the UM/UIM carrier in being identified at trial at which the insured's damages, under the policy, are determined by rules applicable to tort cases is shown by the permissibility of joining, as defendants in an action brought by the insured, the tortfeasor *and* the UM/UIM carrier. Indeed, [the insurer's] position here is no different from that of any insurer that is sued directly for breach of its policy or from that of any apparently "deep pocket" corporation that is sued for breach of contract by its promisee. We hold that the circuit court abused its discretion in imposing this partial blackout on public information.

*Id.* at 298-99 (internal citations omitted).

¶41. Other courts likewise have held that the jury has a right to be aware of the identity of an UM carrier defendant. In ***Tucker v. McQuery***, the court found that the jury may be informed that the UM carrier is the real party in interest. ***Tucker v. McQuery***, 107 Ohio Misc. 2d 38, 40, 736 N.E.2d 574, 575 (Ohio Ct. Common Pleas 1999). It noted the basic public policy for excluding evidence of insurance under Rule 411, stating that "we do not want juries to 'be reckless in awarding damages' as they will be paid 'not by the defendant,

19

but by a supposedly well-pursed and heartless insurance company that has already been paid for taking the risk.'" *Id.* at 41 (quoting *Wigmore on Evidence*, § 282a, 148 (Chardbourn Rev. 1979)). The court then found that the disclosure of the insurance company as the real defendant "does not require exclusion, as this is 'another purpose' as contemplated by" Rule 411. *Id.* It concluded that "jurors have the right to know who the real party in interest is." *Id.* at 42; *see also Wheeler v. Creekmore*, 469 S.W.2d 559 (Ky. 1971) ("It is our opinion that the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield in uninsured-motorist cases to the procedural desirability of letting the jury know who are the parties to the litigation where the uninsured motorist carrier elects to participate actively in the trial.").

*b. The Virginia Approach*

¶42.    In *Travelers Insurance Co. v. Lobello*, the Virginia Supreme Court determined that it was prejudicial error to inject insurance into the case. *Travelers Ins. Co. v. Lobello*, 186 S.E.2d 80 (Va. 1972). In *Lobello*, the plaintiff sued three tortfeasors (drivers of three other cars) subsequent to an automobile accident. *Id.* at 81. One of the three codefendants was uninsured; therefore, the plaintiff "served a copy of the motion for judgment on . . . his uninsured motorist carrier." *Id.* The UM carrier "filed grounds of defense in its own name and participated in trial of the case." *Id.* The insurer's counsel "obtained the permission of the trial court to tell the jury he represented [the plaintiff's] uninsured motorist carrier." *Id.* at 82. One of the codefendants, as well as the plaintiff, objected. *Id.* The jury was then informed that the uninsured defendant "was an uninsured motorist and that [the insurer's] attorney was assisting him in his defense." *Id.* The Supreme Court of Virginia found that

20

it was prejudicial error to the insured codefendant to inject insurance into the case. *Id.* "To tell the jury that [the uninsured codefendant] was uninsured was to permit it to infer that [the other codefendant] was insured. And where two or more defendants may be jointly and severally liable, to say that one defendant has 'insurance backing' is to create a situation permitting the return of a possibly inflated verdict binding upon on defendants so liable." *Id.*; *see also* ***Allstate Ins. Co. v. Wade***, 579 S.E.2d 180 (Va. 2003) (UM insurer in an automobile accident case involving intoxicated defendants wanted to inform jury that insurance company, not the defendants who engaged in reprehensible conduct, would be paying punitive damages award; court held that the injection of insurance was an improper attempt to deflate the award, prejudicing plaintiffs).

*c. Analysis*

¶43.     I find the reasoning followed by Florida and like courts compelling. Heflin was within her rights to join Nationwide as a party to the action. Absent compelling circumstances, the jury and the public have a right to know the identity of the parties to a case.[28] The Mississippi Rules of Civil Procedure and constitutional notions regarding the

---

[28]Indeed, Mississippi provides statutorily for extenuating circumstances in which the identity of a party may be concealed, for example, in youth court cases or adoption cases. *See* Miss. Code Ann. §§ 43-21-251(2) (Rev. 2009), 93-17-25 (Rev. 2013). This indicates that Mississippi law favors disclosure of the parties, absent some compelling circumstance necessitating the identity of a party be concealed. The majority's view, doing what the Legislature has not done, appears to invade the province of the Legislature. Had the Legislature wanted to include insurance defendants in the category of parties whose identity may be concealed, it would have so provided, as it has done for minors in youth court and adoption cases. The purpose of keeping minors' identities confidential is to protect the best interests of minor children, and to prevent injury that might occur from the dissemination of private and potentially damaging information. ***In re R.M.J.B.***, 133 So. 3d 335, 346 (Miss. 2013) (King, J., concurring in part and dissenting in part). In the case of youth courts, youth

openness of court proceedings dictate such a result. Such concerns clearly outweigh any unsubstantiated prejudice to the verdict that the mere identity of a party may cause. Jurors likely already assume that insurance is involved, and modern notions indicate that the presence of insurance is unlikely to affect a jury verdict; thus, Nationwide's unsubstantiated economic concerns are not sufficient to outweigh the importance of identifying the parties in a case to the jury. This is especially true where, as in this case, that party actively participates in the litigation to defend or protect its interests. The jury was entitled to understand Nationwide's identity and motivation for defending the lawsuit.

¶44. Additionally, the Virginia cases are distinguishable from the case at hand. In **Lobello**, the injection of insurance by a nonparty potentially prejudiced codefendants, a situation not present in this case. In **Wade**, the admitted *purpose* of injecting insurance into the case, when the insurer was *not* a party to the lawsuit, was to influence the award of damages. Moreover, Virginia law, unlike Mississippi law, does not allow a direct action in contract against an uninsured motorist carrier until judgment in tort has already been entered against the tortfeasor. **Willard v. Aetna Cas. & Sur. Co.**, 193 S.E.2d 776, 778 (Va. 1973); *see Vaughn*, 445 So. 2d at 226. Thus, in the cases decided in Virginia, the plaintiff had no right to join

courts are specially tasked with protecting and nurturing minors. *See id.*; Miss. Code Ann. § 43-21-103 (Rev. 2009). Moreover, children are under the disability of minority, and because they cannot act for themselves, equity courts are specially tasked with protecting the rights of minors. **Aleck v. Phelps**, 230 So. 2d 789, 792-93 (Miss. 1970). "From the earliest times, infants were regarded as entitled to the special protection of the state." **Wheeler v. Shoemake**, 57 So. 267, 285 (Miss. 1952). Chancery courts, which have jurisdiction over infants, therefore have the duty to protect minors' interests and welfare. **Id.** at 286. The Legislature has not determined that insurance companies have a similar need for protection and confidentiality from the courts, nor are insurance companies under any similar disability that would garner a need for the court's special protection.

the insurer as a party to the lawsuit, and the procedural concerns at issue here were nonexistent.

¶45. Furthermore, it stretches credulity to argue that the mere knowledge that an insurance company is a defendant in a lawsuit prejudices that insurance company. *See Reed v. Wimmer*, 465 S.E.2d 199, 208 (W. Va. 1995) ("Apart from the fairly obvious conclusion that most jurors are aware of the law mandating insurance in West Virginia, there is no consensus among jurists as to which party evidence of insurance adversely affects.") ("Today with widespread insurance coverage and mandatory insurance laws in many states, most courts are reluctant to grant a mistrial or reverse a verdict merely because the issue of insurance was raised . . . . The prevailing view among the commentators is that evidence of insurance is rarely prejudicial[.]"). Jurors are likely to assume that insurance is involved in litigation involving automobile accidents. *See Bingham v. Poswistilo*, 14 Pa. D. & C. 5th 17, *10 (Pa. Ct. of Common Pleas 2011) ("As a practical matter, it is difficult to conceive how 21st century jurors are unaware of the existence of insurance in motor vehicle litigation."). Indeed, given that "liability insurance is made compulsory in many states . . . in such cases the fact of insurance is notorious under the law." *Wigmore*, *supra*, §282a, at 169. Automobile liability insurance is compulsory under Mississippi law, so it is difficult to conceive that most jurors would be unaware of insurance presence in litigation regarding automobile accidents. Miss. Code Ann. §§ 63-15-3(j), 63-15-4(2)(a) (Rev. 2013). Additionally, "apart from compulsory insurance, the general prevalence of liability insurance for automobile injuries is known to the jurors; hence, for the law to forbid any disclosure of

23

it in the course of the trial seems to be merely a piece of hypocritical futility." *Wigmore*, *supra*, §282a, at 169.

¶46. Because Nationwide's identity as a proper party to the lawsuit was erroneously concealed from the jury, I would reverse the trial court's judgment and remand for further proceedings. Further, I believe that a harmless error analysis is inapplicable in such a case in which the entire proceeding was irreparably tainted by the improper exclusion of the identity of a party. *Medina*, 724 So. 2d at 1190 ("[W]e find that examination of the record would be pointless because the entire proceeding was tainted by the pretrial exclusion of the insurer's identity, which constitutes a miscarriage of justice.").

¶47. I also disagree with the majority's analysis of Heflin's other points of error. While I believe that these issues are not reversible error, I write because the majority's view upends settled evidentiary law and is in error.

¶48. The trial court excluded Mike's testimony regarding his opinion as to the speed at which Merrill was traveling when the accident occurred. Lay opinion testimony is admissible so long as it is "rationally based on the perception of the witness," "helpful to the clear understanding of the testimony or the determination of a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." M.R.E. 701. Generally, lay witnesses may testify as to their opinion on the speed of a moving vehicle if the witness observed the vehicle in question. *Howard v. State*, 346 So. 2d 918, 920 (Miss. 1977) ("The general rule is that 'a witness who observed the moving object in question will be permitted to estimate its speed if he possesses some knowledge or experience, however slight, which will enable him to form an opinion.'" (quoting 32 C.J.S.

24

*Evidence* § 546(53) (1964)) (noting that "most people ha[ve] at least some prior experience in judging speed"). The "testimony must pertain to the speed of the offending vehicle at the time, or just prior to the collision." ***Moore v. State***, 816 So. 2d 1022, 1028 (Miss. Ct. App. 2002). Mike's testimony was that he looked in his rearview mirror just prior to the collision and observed Merrill's vehicle about to hit his vehicle, thus his opinion on speed was based upon his perception, because he observed the vehicle in question. Excluding Mike's testimony regarding speed because he was not qualified as an expert was error, as lay opinion on speed based on the witness's observation is permissible under Mississippi law.

¶49. The trial court also excluded Mike's testimony regarding Merrill's statements to Mike after the accident, despite the statements constituting admissions by a party opponent. The trial court did so, at least in part, because Merrill was not available for cross-examination because he was deceased. Part of the reason for excluding the statement was that the judge feared it would "inflame and confuse the jury" because the statement was made by someone now deceased. I find no basis under Mississippi law to exclude an admission by a party opponent merely because that party is deceased.[29] *See **Savarese v. Agriss***, 883 F.2d 1194, 1199-1202 (3d Cir. 1989) (admission by a deceased party-opponent admissible; "We believe the better view is that the fact of the declarant's death impacts on the weight of the evidence rather than its admissibility."); ***White v. Honeywell, Inc.***, 141 F.3d 1270, 1277 (8th Cir.

---

[29]Indeed, the hearsay rules, which are not directly applicable to this analysis because this case involves an admission by a party opponent, allow for statements made by witnesses unavailable due to death. M.R.E. 804. Thus, the rules certainly contemplate allowing into evidence statements made by deceased persons, which undermines the idea that the jury would be "inflamed and confused" by the person's status as deceased.

25

1998) (unavailability does not render an admission by a party opponent unfairly prejudicial; although such a statement "remains subject to the Rule 403 balancing of probative value and unfair prejudicial effect, unavailability itself is not a factor adding to unfair prejudicial effect"); *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 984-85 (10th Cir. 2008) ("[C]ourts have consistently rejected the argument that for an admission by a party opponent to be admissible, the declarant must be available for cross-examination."). Thus, while I agree that the statements made by Merrill to Mike after the accident are subject to a Rule 403 analysis and may ultimately be inadmissible, the fact that Merrill is deceased is not a proper consideration under that analysis.

¶50. Because I believe that Nationwide's identity as a participating party in the litigation was improperly concealed from the jury, and because I disagree with the majority's analysis of the evidentiary issues raised, I would reverse the trail court's judgment and remand for a new trial.

**KITCHENS, J., JOINS THIS OPINION.**