# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00555-COA

**LARRY MOORE AND NINA MOORE**                                **APPELLANTS**

**v.**

**MISSISSIPPI FARM BUREAU CASUALTY**                          **APPELLEES**
**INSURANCE COMPANY AND ROSIE KELLUM**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2022 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | R. BRITTAIN VIRDEN |
| ATTORNEYS FOR APPELLEES: | JENESSA JO CARTER HICKS |
| | DALE GIBSON RUSSELL |
| | MICHAEL TODD BARTLEY |
| | WILLIAM BUCKLEY STEWART |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 11/07/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1. This appeal arises from an automobile accident that occurred in Washington County, Mississippi, between Larry Moore and Rosie Kellum. Larry and his wife Nina Moore sued Kellum and her insurer, claiming that Kellum was negligent. After the Moores' automobile insurance carrier, Mississippi Farm Bureau Casualty Insurance Company (Farm Bureau), determined that the value of the Moores' damages claims did not exceed their policy's liability limits for uninsured motorist (UM) coverage, the Moores amended the lawsuit to add Farm Bureau as a defendant. Before the trial, the Washington County Circuit Court granted Farm Bureau's motion in limine to exclude any references to Farm Bureau as a defendant or

as the Moores' UM carrier.  At trial, the jury found Kellum was not liable for the incident.

¶2.     The Moores appeal from the circuit court's order granting Farm Bureau's motion in limine, and they request that this Court reverse and remand for a new trial "with the identity of the UM carrier disclosed and complete evidence submitted for the jury's consideration." We find no error and affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

¶3.     On June 2, 2018, Larry's motor vehicle and trailer collided with a vehicle driven by Kellum.  Larry suffered a fractured foot and several lacerations on his knee, head, and arms, with his medical expenses totaling $12,031.82.  His vehicle and trailer, which carried mobile barbecue equipment,[1] were also damaged.  Each party claimed that the other proximately caused the accident.

¶4.     The vehicle driven by Kellum was owned by her daughter Cynthia Louis, who had liability coverage of $25,000 with Liberty Mutual Insurance Company (Liberty Mutual). Kellum also had automobile liability insurance with Allstate Insurance Company (Allstate) with liability limits up to $100,000.  The Moores' automobile policy with Farm Bureau had $250,000 in stacked UM coverage, entitling Farm Bureau to offset any amount paid to the Moores under the other liability policies.

¶5.     Farm Bureau paid the Moores for the property damage to Larry's truck and for a portion of his medical expenses.  On December 20, 2018, Farm Bureau filed a complaint against Kellum in the County Court of Washington County.  The complaint asserted that

---

[1] Larry was returning home from a fundraiser where he had been a volunteer caterer.

2

Kellum "negligently operated her vehicle" resulting in the accident and demanded a judgment for property damages and medical expenses in the amount of $21,528.72, plus interest, costs, and attorney's fees. After Farm Bureau received a subrogation payment from Liberty Mutual (Louis's carrier), Farm Bureau dismissed the lawsuit against Kellum on June 14, 2019. The release and agreement between Farm Bureau and Kellum/Liberty Mutual expressly stated:

> It is understood and agreed that this settlement is the compromise of doubtful and disputed claims and that the payment herein referenced is not to be construed as an admission of liability on the part of the parties hereby released, and that said Releasees deny liability therefor and intend merely to avoid litigation and buy their peace.

¶6. On March 16, 2020, the Moores filed a complaint against Louis and Kellum,[2] alleging that Kellum's vehicle "negligently crossed over into . . . Moore's lane of travel thereby causing the motor vehicle accident." The complaint further asserted that the Moores were entitled to damages, including past, present, and future medical expenses; past, present, and future lost wages and loss of wage-earning capacity; past, present, and future emotional distress; past, present, and future pain and suffering; and loss of consortium. Defendants Kellum and Louis filed an answer and affirmative defenses on May 5, 2020, denying liability.

¶7. The Moores' attorney sent two letters to Farm Bureau on January 19, 2021, and January 28, 2021, claiming that total damages suffered by the Moores totaled $364,360.82

---

[2] Kellum's husband was also named a defendant, but the complaint was later amended to remove him as a party after his death.

and requesting payment of UM benefits under their policy in the amount of $189,345.82.[3] Farm Bureau informed the Moores on March 8, 2021, that it would "not be making a payment for [UM] benefits at this time as it does not believe the value of the Moores' damage claims exceed the underlying $125,000 in liability limits." In response, the Moores filed a second amended complaint on March 16, 2021, naming Farm Bureau as a party to the original action. The complaint asserted that Farm Bureau had "wrongfully, negligently and improperly failed to honor [its] obligations under the insurance policies/contracts and failed to pay the Plaintiffs their UM benefits owed."

¶8.     On May 4, 2021, a "Stipulation of Partial Settlement with Rosie Kellum" was filed with the circuit court, stating that all claims between the Moores and Louis/Liberty Mutual had "been fully and finally compromised and settled" for $25,000 and that those claims were "fully and finally dismissed with prejudice." The stipulation noted that in the event of a trial on the issue of liability, "Kellum and if necessary, Farm Bureau" would be "entitled to an offset or credit in the amount of $25,000.00 towards any future settlement or jury verdict." The stipulation further clarified that the settlement was "not to be construed as an admission of liability" by Kellum and was "not to be disclosed to the jury" at trial.

¶9.     On September 14, 2021, a Rule 30(b)(6) deposition of Farm Bureau's claim adjuster was conducted. *See* M.R.C.P. 30(b)(6). He testified that "the liability portion of the claim was never really resolved" and that "[t]here has been no decision made as to who is at fault in the accident." The adjuster did "recognize that there is potentially some comparative fault

---

[3] The January 28 letter revised the January 19 requested amount from $139,345.82 to $189,345.82.

in the accident based on the information we received recently."[4]

¶10.	Farm Bureau filed a motion in limine on November 2, 2021, seeking to exclude "all references to Farm Bureau as a Defendant and as the Plaintiffs' underinsured motorist carrier" at trial. Specifically, the insurance company asserted that because the only issues for trial were liability for the accident and the value of the Moores' damage claims, its identity as a defendant and as the Moores' UM carrier was "irrelevant" and the probative value of such evidence "is far outweighed by the danger of unfair prejudice to the parties and confusion of the issues."[5] A hearing on the motion was held on November 22, 2021.

¶11.	On January 10, 2022, the circuit court granted Farm Bureau's motion in limine, ordering that "all references to Farm Bureau as a Defendant or as the Plaintiffs' [UM] carrier at the trial of this matter shall be prohibited." The court's order further allowed counsel for Farm Bureau "to participate in the trial solely for the purposes of examining those witnesses whose testimony stands to implicate [UM] coverage including, but not limited to, those witnesses who will testify as to Plaintiffs' damages." The Moores filed a motion to reconsider the court's order on February 1, 2022, which the court denied.

¶12.	The matter proceeded to trial on March 7, 2022. Prior to the start of proceedings, the attorney for the Moores sought to make an offer of proof that Farm Bureau had taken an opposing position on the liability issue in its former (subrogation) lawsuit against Kellum.

_____

[4] This information was received from Allstate (Kellum's insurer), whose retained accident reconstructionist opined that Moore's trailer entered Kellum's lane of traffic.

[5] Although other items were listed in the motion in limine, they are not relevant to this appeal.

The circuit court refused to alter its prior order granting the motion in limine, finding that Farm Bureau's position in the other case was not relevant to whether Kellum was negligent. After three days of trial, the circuit court jury rendered a unanimous verdict in favor of Kellum on the issue of liability.

¶13.    In the posttrial motion for a judgment notwithstanding the verdict (JNOV) or a new trial, the Moores argued that "they were prejudiced in presentation of their case-in-chief" because Farm Bureau "was not identified as a party to the jury . . . even though its lawyers were allowed to actively participate in the trial." Specifically, they claimed the court should grant them a JNOV or new trial because they were unable to "cross-examin[e] Farm Bureau on the critical issue of liability and fault." The circuit court denied the motion. The Moores raise several arguments on appeal related to the court's granting of the motion in limine.

**DISCUSSION**

¶14.    To support their motion in limine, Farm Bureau cited a factually similar case, *Heflin v. Merrill*, 154 So. 3d 857 (Miss. 2014), which also involved an automobile-negligence claim and a corresponding UM action against a plaintiff's insurer, Nationwide Insurance Company (Nationwide). *Id*. at 859 (¶1). As here, the insurer filed a motion in limine seeking to exclude any mention of the carrier as a defendant and of the plaintiff's UM policy coverage with the insurer. *Id.* at (¶2). The trial court granted the insurer's motion in limine, finding that "[w]hether or not UM coverage exists is not relevant." *Id*. The trial court opined that this "issue[,] along with the existence of Nationwide Insurance Company[,] to the jury would potentially prejudice that jury as to a determination of damages." *Id.* at 859-60 (¶2).

6

¶15.    On writ of certiorari,[6] the Mississippi Supreme Court upheld the trial court's ruling,

finding, "We are unable to discern the purpose or relevance of Nationwide's role, and it is

noteworthy that [the appellant] suggests no purpose or theory of relevance for us to analyze."

*Id*. at 861 (¶11).  Further, because the only issue was the amount of the appellant's damages,

the supreme court found "no reason for the jury to be informed of Nationwide's role as [the

appellant's] [UM] insurer."  *Id*. at (¶13).  "This information would have been of no help in

deciding the issues before the jury; indeed, the trial judge would have risked a mistrial by

allowing the plaintiff to use insurance to prove the defendant's negligence."  *Id*.; *accord*

M.R.E. 411.

¶16.    In the present case, Farm Bureau argued in its motion in limine that any reference to

the carrier as a defendant was irrelevant because the only issues at trial were "liability for the

subject motor vehicle accident and the value of Plaintiffs' claims."  "After due consideration

of said motion, oral arguments, and the Mississippi Supreme Court's decision in *Heflin v.*

*Merrill*," the circuit court granted Farm Bureau's motion in limine to prohibit "all references

to Farm Bureau as a [d]efendant or as the [p]laintiffs' underinsured motorist carrier at the

trial[.]"  The court did allow Farm Bureau's counsel to participate at trial in a limited

capacity with regard to any testimony that might implicate UM coverage or the extent of the

plaintiffs' damages.

¶17.    This Court reviews a circuit court judge's ruling on a motion in limine for an abuse

---

[6] This case was initially before our Court.  We found no error in the trial court's ruling to grant the motion in limine.  *Heflin v. Merrill*, 154 So. 3d 887, 891 (¶12) (Miss. Ct. App. 2013).

of discretion. *Rogers v. Thames*, 309 So. 3d 1154, 1160 (¶12) (Miss. Ct. App. 2021) (citing *Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 201 So. 3d 1046, 1052 (¶6) (Miss. 2016)). "There is no abuse of discretion in granting a motion in limine if the court determines that (1) the material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Id*. (quoting *Bay Point Props. Inc.*, 201 So. 3d at 1052 (¶6)).

### I.     Whether *Heflin* is applicable to the facts of this case.

¶18.    The Moores note that in *Heflin*, the insurer "specifically admitted liability and agreed to pay any damages ordered at trial that exceeded available liability coverage." Thus, they contend that the supreme court's ruling in *Heflin* is not applicable to the present case because no admission of liability was submitted for the accident. Nor did Farm Bureau submit "a stipulation in writing that it would be responsible for payment of any judgment to Plaintiffs pursuant to the [UM] provision of the subject auto insurance policy as required by *Heflin*."

¶19.    We find no language in *Heflin* limiting the supreme court's holding to those specific instances where liability is admitted. Furthermore, the United States District Court for the Southern District of Mississippi has rejected this precise argument in *Thomas v. Allstate Insurance Co.*, No. 3:19-cv-222-KHJ-FKB, 2021 WL 2877906 (S.D. Miss. July 8, 2021). Like the Moores, the plaintiff in *Thomas* claimed that because the alleged tortfeasor's liability was in dispute, and the insurance carrier (Allstate) had not stipulated to liability, *Heflin* was not applicable. *Id*. at *2. The district court determined that whether the

8

plaintiff's damages were covered by her UM insurance did not make the tortfeasor's "alleged negligence more or less likely, nor d[id] it have any probative value as to the amount of damages." *Id.* Thus, Allstate's role was "not relevant under Federal Rule of Evidence 401." *Id.* The district court further agreed with our supreme court's reasoning in *Heflin*, stating "that any relevance Allstate's role might have is outweighed by the risk of confusion of the jury and will unfairly prejudice [the underlying tortfeasor]." *Id.* We likewise find, as Farm Bureau argues, "any nominal relevance, if any at all, arising from [its] role as a [d]efendant in this case and as the [UM] insurer for the [Moores] [was] substantially outweighed by the risk of confusing the jury" and was properly excluded under Mississippi Rule of Evidence 403.

¶20. In addition, Farm Bureau stipulated (in the motion in limine) that the policy's UM coverage "will be applicable to satisfy any judgment over the available policy limits, not to exceed the available limits of [UM] coverage, and subject to any applicable offsets and/or credits available to Farm Bureau under the terms of the policy and/or existing law." Farm Bureau also submitted a proposed pretrial order that included the following stipulation:

> Any final judgment for Plaintiffs, if any, in excess of the $25,000 liability limits paid on behalf of Defendant Louis and the $100,000 liability limits maintained by Defendant Kellum, would be the responsibility of Farm Bureau up to its policy limits of $250,000, *subject to* any applicable offsets and/or credits available to Farm Bureau under the terms of the policy and/or existing law.[7]

(Emphasis added). We agree with Farm Bureau that "[t]his stipulation is entirely consistent with the stipulation by Nationwide in *Heflin*." *See Heflin*, 154 So. 3d at 891 (¶10).

---

[7] Plaintiffs' counsel, however, did not sign the order containing the stipulations.

Therefore, we find no merit in the Moores' argument that *Heflin* is not applicable on this basis.

> **II.   Whether the doctrine of judicial estoppel prevented Farm Bureau from taking a contrary position on the issue of liability for the accident.**

¶21.   At trial, the Moores argued that they were prejudiced by Farm Bureau's taking "a completely opposite position" as to who was liable for the accident in the separate 2018 lawsuit against Kellum.  As noted above, Farm Bureau's complaint alleged that Kellum's vehicle "negligently crossed over into . . . Moore's lane of travel thereby causing the motor vehicle accident."  In the motion for a JNOV or a new trial, the Moores argued that "the doctrine of judicial estoppel should have prevented Defendant Farm Bureau from changing its position on liability for the subject accident, and Plaintiffs should have been allowed the opportunity to cross-examine Defendant Farm Bureau and its employees over this critical issue."  They reassert this claim on appeal.

¶22.   "Judicial estoppel has three elements—an asserted legal position inconsistent with one previously taken during litigation, *a court's acceptance of that previous position*, and no inadvertence in taking the inconsistent position."  *Saunders v. Nat'l Collegiate Athletic Ass'n*, 352 So. 3d 618, 624 (¶24) (Miss. 2022) (emphasis added) (citing *Clark v. Neese*, 131 So. 3d 556, 560 (¶16) (Miss. 2013)).  Because the prior suit was settled and dismissed with prejudice, we find there was no acceptance by the circuit court that Kellum was liable for the accident.  In fact, the settlement order expressly stipulated that the settlement and dismissal of charges were "not to be construed as an admission of liability" by Kellum.  *See He Shao*

*v. Univ. of Miss. Med. Ctr.*, 272 So. 3d 138, 140 (¶5) (Miss. Ct. App. 2019) (holding that the trial court was without authority to dismiss second complaint on basis of judicial estoppel, as the prior complaint had been dismissed, and the trial court "made no final judgment").

¶23.    The Moores also contend that Farm Bureau's assertion in the prior complaint that Kellum was negligent should be "the law of the case" in the second suit.  The Mississippi Supreme Court has explained the "the law of the case" doctrine as follows:

> The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case.  Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts.

*Lewis v. Pagel*, 172 So. 3d 162, 174 (¶23) (Miss. 2015).  However, "[t]he law-of-the-case doctrine requires a dispositive, final ruling on a question of law." *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 389, 399 (¶46) (Miss. 2018).  Again, no final, dispositive ruling existed as to Kellum's negligence in the prior suit.  In any event, such disposition would have been a finding of fact, not a conclusion of law.  Accordingly, we find no merit to the Moores' judicial-estoppel arguments.

### III.    Whether the circuit court's ruling "judicially eliminate[d]" the Moores' claim for breach of contract against Farm Bureau.

¶24.    In the second amended complaint, the Moores asserted a separate claim for breach of contract against Farm Bureau.  They argue that the circuit court's order granting the motion in limine "judicially granted dismissal via summary judgment to Farm Bureau for the breach[-]of[-]contract claim because [the Moores] were not allowed to present any evidence, testimony, cross-examination or argument on their valid claims."  The United States District

11

Court for the Southern District of Mississippi, discussing Mississippi law, has stated:

> [A]n allegation that no underinsured benefits have been tendered [by the underinsured carrier] is not an assertion of bad faith or even necessarily a breach of contract. As [the underinsured carrier] notes, the plaintiff *must prove fault and damages against the tortfeasors before it can be known whether or to what extent underinsured benefits are due to the plaintiff.* That will be accomplished at the trial of this case.

*Delaughter v. Dufrene*, No. 1:17-cv-294-LG-RHW, 2017 WL 5501498, at *2 (S.D. Miss. Nov. 16, 2017) (emphasis added). We agree with the district court's reasoning. As Kellum aptly summarizes in her brief, "Farm Bureau's presence and/or identity would not make it any more or less probable that Ms. Kellum did or did not cause this accident"; therefore, the identity was simply not relevant to the action. And because the jury unanimously concluded that Kellum was not liable for the accident, the Moores' UM policy benefits with Farm Bureau were never implicated and rendered any potential claim for breach of contract against Farm Bureau moot.

¶25. Under this issue, the Moores also "submit this is an entirely unfair result and overextends the purpose of Mississippi Rule of Evidence 411 prohibiting disclosure of liability insurance to the jury." However, in *Heflin*, the supreme court acknowledged,

> There is a debate among members of our Bar as to whether informing the jury of an uninsured—or underinsured—motorist carrier's role as a party is required, and whether the fact of that role is evidence, or simply a matter within the purview of a trial judge in controlling the courtroom and trial. We hold that it is both.

*Heflin*, 154 So. 3d at 860 (¶8). The *Heflin* Court thereby agreed with the trial court that there was "nothing unfair" in the jury's being unaware of the UM carrier's role in the litigation. *Id*. at 862 (¶17). Furthermore, the Moores have cited no relevant authority to support their

12

argument that the circuit court's order granting Farm Bureau's motion in limine prejudiced their right to a fair trial or was misleading to the jury.[8]

### IV. Whether the circuit court's evidentiary ruling negatively impacts Mississippi UM statutes.

¶26. The Moores contend that "the beneficial purposes of the Uninsured Motorists Act are violated when the UM carrier is allowed to hide its identity from the jury, but at the same time [to] submit extensive evidence at trial via its attorneys." We first note that *Heflin* was decided under the current UM statutory framework.[9] Second, we find the Moores' right to assert their claims against Farm Bureau for UM benefits was protected in this instance. Farm Bureau admits that "[h]ad the jury found in favor of the Moores on liability and awarded damages, . . . it would be bound to pay those damages that exceed[ed] Kellum's liability limits, up to its limits, and subject to any offsets or credits available under the law." However, the jury's verdict in favor of Kellum precluded recovery under their UM coverage with Farm Bureau. Thus, we find no merit to the Moores' claim.

### CONCLUSION

¶27. We conclude that the circuit court's ruling granting the motion in limine was not error. Although the Moores have not expressly appealed the circuit court's ruling on their motion for a JNOV or a new trial, the substantive argument contained in that motion challenged the court's ruling on the motion in limine and encompassed the issues raised above. Based on

---

[8] Rather, the Moores rely on Justice King's dissent in *Heflin*, as well as cases from other states (cited in Justice King's *Heflin* dissent), to support their contention that Farm Bureau's presence as a defendant should have been disclosed.

[9] *See* Miss. Code Ann. § 83-11-101 to -111 (Rev. 2011).

our findings, we additionally hold that the court's decision to deny the Moores' posttrial motion for this purpose was not error, and we affirm the judgment.

¶28. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., AND GREENLEE, JJ., CONCUR. EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE OPINION. LAWRENCE AND SMITH, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, LAWRENCE, McCARTY AND SMITH, JJ.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶29. I agree with the majority that the Supreme Court's decision in *Heflin v. Merrill*, 154 So. 3d 857, 860-62 (¶¶8-16) (Miss. 2014), is judicial precedent. But I opine the trial court's exclusion of Farm Bureau's identity from the jury presents a twofold problem. First, the decision to exclude the identity of a party to the proceeding is a procedural matter, not an evidentiary one. Second, even accepting that the exclusion of the plaintiff's insurance company is an evidentiary matter, the facts of this case are distinguishable from *Heflin*, which is why I dissent in part from the majority opinion. Given the distinguishing facts, I would conclude that the trial court erred by excluding Farm Bureau's identity. Farm Bureau's identity was relevant, and excluding the insurance company's identity resulted in an unfair trial.

**FACTS AND PROCEDURAL HISTORY**

¶30. On June 2, 2018, Larry Moore and Rosie Kellum were traveling in opposite directions on a two-lane highway when they crashed into one another. In August 2018, Larry and Nina Moore filed an insurance claim with Farm Bureau. Thereafter, Farm Bureau paid Larry's

14

medical and property damages.

¶31. On January 4, 2019, Farm Bureau filed a subrogation claim against Kellum for the $21,528.78 it paid for the Moores' medical and property damages. Farm Bureau asserted in its complaint that Kellum was at fault:

> Defendant, Rosie Kellum, was negligent in the operation of her automobile. More particularly, the negligence of the Defendant includes, but is not limited to, the following:
>
> 1. Failing to keep the vehicle under free, reasonable and proper control
>
> 2. Failing to yield the right of way,
>
> 3. Failing to keep a proper look out,
>
> 4. Failing to keep a proper lane of travel,
>
> 5. Failing to operate the vehicle at a speed that was reasonable and prudent under the circumstances then and there existing, and
>
> 6. Other acts of negligence to be shown during discovery and at the trial of this case. The foregoing acts of negligence were the proximate cause of the damages to the Plaintiffs' insured, Larry Moore.

¶32. On June 4, 2019, Farm Bureau settled the subrogation claim with Kellum, Cynthia Louis (Kellum's daughter who owned the vehicle Kellum was driving), and Liberty Mutual. On March 16, 2020, the Moores filed a negligence claim against Kellum and Louis. On January 28, 2021, the Moores sent a demand letter to Farm Bureau requesting under-insured benefits in the amount of $189,345.81. On March 8, 2021, Farm Bureau responded to the Moores' request, stating that it "believe[d]" the combined $125,000 from Liberty Mutual and Allstate would be sufficient to cover Larry's damages, and, therefore, Farm Bureau did not owe Larry under-insured benefits. On March 16, 2021, the Moores amended their complaint

15

to add Farm Bureau as a party, raising a breach-of-contract claim against it for refusal to pay under-insured motorist benefits.

¶33. On September 14, 2021, the Moores deposed Farm Bureau's agent, who testified that Farm Bureau acknowledged that Larry had under-insured coverage available in the amount of $125,000 but asserted that the coverage was not accessible until after a determination had been made that his damages rose above the $125,000 provided by Liberty Mutual and Allstate. Farm Bureau's agent further testified that "early on" Farm Bureau had not made a decision as to Kellum's liability. Two years later, however, Farm Bureau took the position that Larry may have had some fault in the accident.

¶34. On November 2, 2021, Farm Bureau filed a motion in limine to "exclude all references to Mississippi Farm Bureau Casualty Insurance Company as a defendant and as plaintiff's under-insured motorist insurer at trial and for related relief." On November 22, 2021, the trial court held a hearing on the motion in limine.

¶35. During the hearing, Farm Bureau's attorney argued that Farm Bureau's existence was irrelevant to the issue of Kellum's liability. Farm Bureau's attorney further argued that because Farm Bureau had stipulated to under-insured coverage, if the jury found Kellum liable in excess of $125,000, then there would be "no insurance issues to be decided by the jury," and, thus, mentioning Farm Bureau would serve to confuse the jury. At the same time, however, Farm Bureau requested to "participate at the trial" as though it represented Kellum (taking a position opposing its insured). The Moores argued that it would not be possible to present a case against Farm Bureau if its identity was not disclosed. In addition, the Moores

16

argued that the law permitted the jury to know the existence of the insurance company when there is a direct breach-of-contract claim against the under-insured carrier. The trial court determined that Farm Bureau's existence was not relevant to the jury. The trial court granted the motion in limine to exclude all references to Farm Bureau. But the trial court permitted Farm Bureau "to participate in the trial solely for the purposes of examining those witnesses whose testimony stands to implicate underinsured motorist coverage. . . ."[10]

¶36. On May 7, 2022, the jury trial between the Moores and Kellum commenced. Throughout the trial, Farm Bureau's attorneys participated at every stage of the proceedings:

### 1. Voir Dire Examination

¶37. Farm Bureau's first attorney introduced himself to the jury pool as "one of the attorneys for the defendant, Ms. Kellum." He asked the jury pool if any of them knew Kellum or Farm Bureau's expert James Koerber. He also asked the jury pool if any of them would be overly sympathetic to the Moores.

### 2. Jury Selection

¶38. Farm Bureau's attorney objected to the Moores' for-cause challenge of Juror 17. Larry's attorney stated that he had sued juror 17's company in another case. Farm Bureau's attorney commented that the matter was not "raised in the process." The trial court denied the for-cause challenge.

### 3. Presentation of Evidence

¶39. Farm Bureau's attorney questioned Larry about his claim for lost income on his

_____

[10] The trial was not bifurcated, and the claims were not severed.

financial statements from the body shop he owned. Farm Bureau's second attorney cross-examined Larry's accountant Albert Harvey Tackett Jr., who introduced himself as "one of the attorneys for the defendant."

### 4. Jury Instruction

¶40. Farm Bureau's attorney drafted a jury instruction on "the proper method of recovery for the lost profits" that was presented to the jury.

### 5. Closing Argument

¶41. Farm Bureau's attorney said to the jury, "*I believe a fair number should be zero because I don't believe Ms. Kellum is at fault*." (Emphasis added). He further stated:

> [I]t looks a lot like Mr. Moore is wanting some sort of jackpot justice. If he wants a jackpot he needs to try to go pull the long arm of the slot machine over at Harlow's and not come pull the long arm of the law in here.

### DISCUSSION

### I. The identity of the insurance company is a procedural matter.

¶42. I respectfully disagree with our Supreme Court's holding in *Heflin* that the disclosure of the insurance company's identity is an evidentiary matter. *Heflin*, 154 So. 3d at 860 (¶8); *see Medina v. Peralta*, 724 So. 2d 1188, 1190 (Fla. 1999) (stating that the determination of whether to exclude the identity of a party is procedural).[11] I find Justice King's dissent

---

[11] A distinction exists between a motion requesting the exclusion of an insurance company's "existence" versus the exclusion of an insurance company's "policy." Evidence is "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." *Heflin*, 154 So. 2d at 866 (¶36) n.24 (quoting *Evidence*, Black's Law Dictionary 595 (8th ed. 2004)). Whereas, "identity" is "the fact of being the same person or thing as claimed." *Identity,* Merriam-Webster's Dictionary 354 (7th ed. 2016).

18

compelling.[12] *Heflin*, 154 So. 3d at 864 (¶33) (King, J., dissenting).  It states the following:

> [M]erely identifying Nationwide as a defendant is not "evidence that a person was . . . insured against liability," and is thus not an evidentiary issue. Rather, the issue regards simply referencing the proper procedural posture of the case. The issue that was placed before the trial court, and which is before this Court, is whether a party defendant may actively participate in a case and not be identified as a party defendant in the case. Thus, the majority mistakenly analyzes a purely procedural issue as if it were an evidentiary issue. The identifying by name of a party defendant, who actively participates in the trial of a case, is not an effort to place an item of evidence into the trial record. Nor is the identifying by name of a party defendant, who actively participates in the trial of a case, an effort to offer "evidence that a person was or was not insured against liability" or that "he acted negligently or otherwise wrongfully." M.R.E. 411. If Nationwide, a party defendant actively participating in the trial of this case, did not wish to be identified by name, its remedy was simple and straightforward. That remedy was to cease all active participation in the trial of this case, or to move to sever the cases.
>
> The majority's view—that the mere identity of a party is "evidence," rather than an issue involving the openness of judicial proceedings—subjects the identity of every single party in every single case to scrutiny under Rule of Evidence 403, an extremely slippery slope. The ramifications are far-reaching and absurd. Is the identity of a criminal defendant "evidence" and must the trial court be compelled to conduct a Rule 403 analysis of it? What about the identity of the State in a criminal prosecution? What relevance does the identity of the State have to the case? A criminal defendant could argue that the identity of the State carries prejudicial effect on his case, as the weight and authority of the State harm his presumption of innocence and minimize the State's burden of proof. What relevance could its identity possibly have other than to lend clout to the prosecution? Must any mention of the State be thus eliminated from criminal defendants' cases? The possibilities are endless, the slope is slippery, and the majority would subject a trial court to needless analysis, when the identity of the parties is simply information the jury and public have a right to know, absent exceptional circumstances.
>
> In analyzing the issue of whether the identity of a party who actively

---

[12] Notably, Justice King's dissent in *Heflin v. Merrill*, 154 So. 3d 857 (Miss. 2014), reflected the views of then-Court of Appeals Judge Griffis, who wrote the dissenting opinion in *Heflin v. Merrill*, 154 So. 3d 887 (Miss. Ct. App. 2013), joined by then-Court of Appeals Judge Maxwell.

participates in a case should be revealed to the jury, this Court looks to the United States Constitution, rules of procedure, and caselaw. The Mississippi Rules of Civil Procedure require that complaints contain the names of all parties. M.R.C.P. 10(a). Generally, "the identity of the parties to a lawsuit should not be concealed." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979) (internal quotations omitted). Indeed, juries are entitled to know who the defendant in a trial is. *Wigmore on Evidence*, § 282a, at 168-69 (Chadbourn Rev. 1979). Public access to the names of parties "is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). While the public "right to scrutinize governmental functioning," which includes an assurance of fairness that is preserved by open trials, is not as compromised by party anonymity as it is by closure of a trial itself, "there [nevertheless] remains a clear and strong First Amendment interest in ensuring that '(w)hat transpires in the courtroom is public property.' " *Id*. (quoting *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947)). The "almost universal practice of disclosure" due to the "customary and constitutionally-embedded presumption of openness in judicial proceedings" may be overcome only when the need for party anonymity due to privacy concerns "overwhelms the presumption of disclosure mandated by procedural custom." *Stegall*, 653 F.2d at 185-86.

Furthermore, Nationwide was properly joined as a party to the lawsuit. M.R.C.P. 19, 20; *Vaughn v. State Farm Mut. Auto. Ins. Co.*, 445 So. 2d 224, 226 (Miss. 1984). As a party to the lawsuit, if Nationwide did not want to tie its defense to Merrill's, it could have filed a motion to sever the lawsuit, and, if granted, ceased participation in the lawsuit regarding Merrill and litigated only the contractual claim against it. M.R.C.P. 21; *see also Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1094 (Miss. 1996) (claims against UM carrier were severed from claims against underlying tortfeasor). The motion in limine, as granted by the trial court, essentially severs the claims while allowing Nationwide to participate in the suit against Merrill and hide its identity from the jury, simply to avoid any prejudice a vague knowledge of insurance coverage might cause.

*Heflin*, 154 So. 3d at 865-67 (¶¶35-38) (King, J., dissenting). To affirm the trial court's decision would be tantamount to allowing Farm Bureau to be a phantom participant. Attorneys Russell and Stewart entered an appearance on behalf of Farm Bureau. The

attorneys had filed motions on behalf of Farm Bureau, but during trial they participated as though they represented Kellum, misleading the jury.

¶43. In this context, the error was procedural. On no other occasion would a named defendant be able to falsely represent its true identity and interest to the jury while simultaneously participating at trial. To this extent, Farm Bureau precluded the Moores from presenting evidence, and Farm Bureau questioned prospective jurors, objected to juror challenges, examined witnesses, and gave closing argument, all without telling the jury that it was disputing the damages element of Larry's negligence claim. When this occurred, Farm Bureau accomplished just what the other courts sought to prevent—a charade. *Gov't Empls. Ins. v. Krawzak*, 675 So. 2d 115, 118 (Fla. 1996); *Dosdourian v. Carsten*, 624 So. 2d 241, 244 (Fla. 1993).

## II. The insurance company's identity is relevant, and the facts of this case are distinguishable from *Heflin*.

¶44. The trial court erred by excluding Farm Bureau's identity because unlike the insurance company in *Heflin*, Farm Bureau's identity was relevant. In *Heflin*, the plaintiff (Heflin) named Nationwide Insurance as a defendant in his negligence lawsuit against the alleged tortfeasor Merrill because Nationwide had insured Heflin with uninsured motorist coverage. *Heflin*, 154 So. 3d 887, 891 (¶10) (Miss. Ct. App. 2013). During discovery, Nationwide stipulated to (1) being the plaintiff's insurance carrier at the time of the vehicular accident and (2) being responsible for any excess of liability coverage of the defendant. *Id*. at 889-90 (¶5).

¶45. Before trial, Nationwide filed a motion in limine to exclude the "existence of

21

Nationwide" and Nationwide's policy because it "would have no relevance to any issue to be decided by the jury." *Id*. at 890 (¶5). The trial court granted the motion in limine, finding that the existence of Heflin's uninsured motorist coverage was not relevant, because "liability [was] admitted" and because including the insurer's identity "would potentially prejudice [the] jury as to a determination of damages." *Id*. at 891 (¶11). "[A] trial was held on damages only." *Id*. at 890 (¶6). The jury awarded Heflin $32,500. *Id*. Heflin appealed, arguing that the trial court had erred by granting the motion in limine to exclude any reference to Nationwide Insurance. *Id*. at 890 (¶7). This Court affirmed the trial court's ruling. *Heflin*, 154 So. 3d at 891 (¶12). Our Supreme Court "granted certiorari to address the issue . . . ." *Heflin*, 154 So. 3d at 860 (¶7).

¶46. Our Supreme Court employed Mississippi Rules of Evidence 403 and 411 to conclude that the trial court did not abuse its discretion because Nationwide's role as a party was not relevant to the defendant's liability when the only issue at trial was the extent of the plaintiff's injuries. *Heflin*, 154 So. 3d at 861 (¶13). The Supreme Court also concluded that identifying the insurance company would have served to confuse the jury. *Id*. at 862 (¶16). In further explanation, the Supreme Court stated that disclosing the identity of the insurance "creates a substantial risk of unnecessarily shifting the jury's attention to insurance details where there are no insurance issues to be decided by the jury." *Id*. at 862 (¶18).

¶47. As previously stated, I respectfully disagree that the mere disclosure of the insurance company's identity to the jury is an evidentiary matter. But even if the disclosure of the identity of Farm Bureau was an evidentiary matter, the trial court still erred.

¶48. According to *Heflin*, to determine whether an insurance company's existence should be disclosed to the jury, Mississippi Rules of Evidence: 401, 411, and 403 are of concern. *Id*. at 861-62 (¶¶9-16). First, under Mississippi Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the case." MRE 401. Second, under Rule 411

> [e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. *But the court may admit this evidence for another purpose*, such as proving a witness's *bias* or prejudice or proving agency, ownership, or control.

MRE 411 (emphasis added). Third, even when the evidence is relevant, the court may exclude the evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403.

¶49. Here, the trial court erred by granting the motion in limine because Farm Bureau's identity was relevant as Farm Bureau clearly had a bias and an inherent interest and essential role in ensuring that the jury returned a defense verdict, especially as to liability. Farm Bureau, was therefore, allowed to maneuver behind the scenes to participate contrary to its insured and contrary to a position it had taken earlier in the litigation. *See Medina*, 724 So. 2d at 1190 (It is "fundamentally misleading to the jury and it deprives a plaintiff of the right to try her case against the party she chooses.").

¶50. There is no question that the identity of Farm Bureau was relevant for the jury because

the facts of this case are distinguishable from *Heflin*, 154 So. 3d at 859-60 (¶¶2-7). Unlike the parties in *Heflin*, Farm Bureau did not stipulate to liability and yet was allowed to tell the jury that Kellum was not at fault (thus, directly commenting on liability). *Id*. at 859 (¶1). I find instructive our Supreme Court's decision in *Hegwood v. Williamson*, 949 So. 2d 728, 731 (¶6) (Miss. 2007).

¶51. *Hegwood* was a case arising out of a vehicular accident between Ansley Hegwood and Mindy Williamson. *Id*. at 729 (¶1). Williamson filed a negligence suit against Hegwood and a breach-of-contract claim against an insurance company. *Id*. at (¶3). Our Supreme Court considered Rule 411 and stated:

> [T]he two claims involve different factual issues and different legal issues. The car accident raises fact issues of how the accident occurred and legal issues of simple negligence (duty, breach of duty, [factual causation], proximate causation, and damages). The breach of contract and bad faith claims raise fact issues of what occurred between the two insurance adjusters and how they made their decisions and legal issues of interpretation of insurance policies and bad faith under which an award of punitive damages may or may not be appropriate.

*Id*. at 731 (¶6).

¶52. Likewise, here, Larry's breach-of-contract claim dealt with separate legal issues from his negligence claim against Kellum. Larry's purpose in identifying Farm Bureau was for the jury to understand that Farm Bureau was a part of the trial only for the jury to determine whether Farm Bureau had breached the contract (the insurance policy) it had with Larry, meaning the identity of Farm Bureau was, without question, relevant to Larry's breach-of-contract claim and should have been admitted for this purpose. Without Farm Bureau's identity being disclosed to the jury or any reference thereto, Larry was unable to try his

24

breach-of-contract claim. *Accord Bus. Commc'ns Inc. v. Banks*, 90 So. 3d 1221, 1225 (¶10) (Miss. 2012) (discussing the elements of a breach-of-contract claim).

¶53. In addition, the jury was just as entitled to know the true identity of all the parties who had a vested interest in disproving each of the elements of Larry's negligence claim. Truthfully, Farm Bureau, whose attorney did not actually represent Kellum, had an interest in disproving liability and keeping the Moores from proving their damages by a preponderance of the evidence (or at least that the damages were not more than Kellum's insurance coverage of $100,000). Indeed, Farm Bureau explicitly expressed an interest in disproving Kellum's liability when its attorney commented in closing arguments that he did not "believe Ms. Kellum [was] at fault."

¶54. With regard to Rule 403, the *Heflin* majority explained that when there is an issue of liability, there is a danger in presenting the insurance company's identity to the jury because the jury may confuse the issues and unfairly prejudice the defendant by assigning fault to him based on his having insurance. *Heflin*, 154 So. 3d at 861 (¶¶11-13, 16); MRE 403. The jury may also prejudice the insurance company by miscalculating damages because of the presumption that insurance companies have deep pockets. *Heflin*, 154 So. 3d at 862 (¶19).

¶55. However, allowing Farm Bureau to actively participate without providing an accurate picture for the jury is inconsistent with other aspects of our law. We have stated time and time again that we assume jurors follow the law. *Galloway v. State*, 122 So. 3d 614, 676 (¶224) (Miss. 2013) (citing Miss. Code Ann. § 13-5-71 (Rev. 2002)); *Walker v. State*, 671 So. 2d 581, 618 (Miss. 1995) (citing *Brent v. State*, 632 So. 2d 936, 942 (Miss. 1994));

25

*McFee v. State*, 511 So. 2d 130, 136 (Miss. 1987); *Arteigapiloto v. State*, 496 So. 2d 681, 685 (Miss. 1986); *Cabello v. State*, 490 So. 2d 852, 857 (Miss. 1986); *Sand v. State*, 467 So. 2d 907, 911 (Miss. 1985)); *accord Johnson v. State*, 475 So. 2d 1136, 1142 (Miss. 1985); *Evans v. State*, 422 So. 2d 737, 744 (Miss. 1982) ("The jury is presumed to have followed the directions of the judge."); *see Irving v. State*, 361 So. 2d 1360, 1369 (Miss. 1978) (excusing the juror when he said he could not follow the law). We have also repeatedly been mindful that a trial is a search for the truth. *Murray v. Gray*, 322 So. 3d 451, 462 (¶38) (Miss. 2021); *Miss. Com'n on Judicial Performance v. Osborne*, 11 So. 3d 107, 115 (¶26) (Miss. 2009) (quoting *Sims v. ANR Freight Systems Inc.*, 77 F.3d 846, 849 (5th Cir. 1996)); *Scoggins v. Ellzey Beverages Inc.*, 743 So. 2d 990, 994 (Miss. 1999); *see Jones v. State*, 203 So. 3d 600, 608 (¶21) (Miss. 2016) (a juror searches for the truth); *Ferguson v. State*, 137 So. 3d 240, 245 (¶15) (Miss. 2014); *Field v. State*, 28 So. 3d 697, 702 (¶13) (Miss. Ct. App. 2010). Farm Bureau's legal maneuvering as a party, however, assaults both of these principles.

¶56. A system of justice that rightfully prides itself on the bedrock foundation of its citizens serving as jurors ought to also pride itself in entrusting these same jurors with the truth. To that end, our rule of law creates an expectation of transparency, and due process requires adherence to that expectation. However, the *Heflin* decision effectively brings about a conflicting result. How can we justify distrusting juries to properly evaluate and calculate damages against insurance companies while at the same time trusting them to sentence defendants to death? The potential that jurors may confuse the issues can be cured by the trial court's use of a limiting instruction or bifurcation. Mississippi Rule of Evidence 105

26

states:

> [I]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, unless expressly waived or rebutted, shall restrict the evidence to its proper scope, contemporaneously instruct the jury accordingly, and give a written instruction if requested.

*Accord Pope v. Pope*, 179 S.W.3d 442, 464 (Mo. Ct. App. 2005) ("However prejudicial . . . [the court] by proper instructions [may] limit the evidence to its legitimate purpose." (quoting *Olian v. Olian*, 59 S.W.2d 673, 677 (Mo. 1933))).

¶57. In this case, the probative value of revealing Farm Bureau's identity was not substantially outweighed by the danger of a prejudicial effect. Instead of revealing the identity of Farm Bureau to the jury and providing the jury with a limiting instruction the trial court excluded all references to Farm Bureau, while allowing it to actively discredit the elements of the claim relevant to the company. This prejudiced Larry and resulted in an unfair trial.

¶58. I am concerned with the fact that Farm Bureau filed for subrogation against Kellum and received payment from Liberty Mutual but then, later on, asserted that Kellum was not liable both in pre-trial discovery and during closing argument. Had the mentioning of Farm Bureau's identity been allowed, Larry could have potentially demonstrated that Farm Bureau was acting in bad faith. Further, Farm Bureau had an interest in the jury finding Kellum not liable because Farm Bureau disputed both Kellum's liability and the extent of the Moores damages. Farm Bureau took an inconsistent position in the litigation regarding liability, which is distinguishable from *Heflin*, 154 So. 3d at 859 (¶1). According to Farm Bureau, the

27

under-insured coverage provision did not apply if the defendant was not found liable, and it did not apply if the damages the Moores were awarded did not exceed $125,000.

¶59.   Farm Bureau's identity should have been disclosed so that Larry could present testimony to the jury that Farm Bureau had changed its position from asserting that Kellum was liable before trial to asserting that Kellum was not liable after trial began.  *See Earle v. Cobb*, 156 S.W.3d 257, 259 (Ky. 2004).  Because of Farm Bureau's interest in the case, and being a named party in the case, as well as Larry's breach-of-contract claim against Farm Bureau, the prejudice the Moores suffered substantially outweighed any potential prejudice to Kellum.  Therefore, I would reverse the trial court's ruling and remand for a new trial.

**McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., JOIN THIS OPINION.**